**THE ROSEN LAW FIRM, P.A.**
Brent J. LaPointe, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: blapointe@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| JOHN VALENTINE, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMPASS MINERALS INTERNATIONAL, INC., KEVIN S. CRUTCHFIELD, EDWARD C. DOWLING, JR., LORIN CRENSHAW, and JENNY HOOD,<br><br>Defendants. | **Case No:**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff John Valentine ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Compass Minerals International, Inc. ("Compass Minerals" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial

1

evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Compass Minerals securities between November 29, 2023 and March 22, 2024, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendant's violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6. Plaintiff John Valentine, as set forth in the accompanying certification, incorporated by reference herein, purchased Compass Minerals securities during the Class Period and was economically damaged thereby.

7. Defendant Compass Minerals describes itself as "a leading global provider of essential minerals focused on safely delivering where and when it matters to help solve nature's challenges for customers and communities. [. . .] The Company's next-generation fire retardants help to slow, stop and prevent wildfires through the use of high-performing and environmentally-friendly products."

8. Pertinent to this action, Compass Minerals began a series of equity investments in Fortress North America, LLC ("Fortress"), which it has described as "a next-generation fire retardant business dedicated to developing and producing a portfolio of magnesium chloride-based fire retardant products to help combat wildfires." On May 5, 2023, Compass Minerals fully took over Fortress. In 2023, Fortress only sold its fire retardant products to the United States Forest Service (the "USFS").

9. Compass Minerals is incorporated in Delaware and its principal executive offices are located at 9900 West 109th Street, Suite 100, Overland Park, KS 66210. The Company's common stock trades on the New York Stock Exchange (the "NYSE") under the ticker symbol "CMP."

10. Defendant Kevin S. Crutchfield ("Crutchfield") served as the Company's Chief Executive Officer ("CEO") from the beginning of the Class Period until January 17, 2024.

11. Defendant Edward C. Dowling, Jr. ("Dowling") has served as the Company's CEO since January 18, 2024.

3

12.     Defendant Lorin Crenshaw ("Crenshaw") has served as the Company's Chief Financial Officer ("CFO") since 2021.

13.     Defendant Jenny Hood ("Hood") has served as the Company's Chief Supply Chain Officer since January 2024.

14.     Defendants Crutchfield, Dowling, Crenshaw, and Hood are collectively referred to herein as the "Individual Defendants."

15.     Each of the Individual Defendants:

    (a)    directly participated in the management of the Company;

    (b)    was directly involved in the day-to-day operations of the Company at the highest levels;

    (c)    was privy to confidential proprietary information concerning the Company and its business and operations;

    (d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    (e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    (f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

    (g)    approved or ratified these statements in violation of the federal securities laws.

16.     Compass Minerals is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency

because all of the wrongful acts complained of herein were carried out within the scope of their employment.

17.  The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

18.  Compass Minerals and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading Statements
### Issued During the Class Period

19.  On November 29, 2023, before the market opened, Compass Minerals filed with the SEC its annual report on Form 10-K for the year ended September 30, 2023 (the "2023 Annual Report"). Attached to the 2023 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Crutchfield and Crenshaw attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

20.  The 2023 Annual Report included the following statement about Fortress and fire retardants in general:

> Fire retardants are a critical tool for helping slow, stop and prevent wildfires by altering fuels (e.g., vegetation) to make them less flammable. Aerial fire retardant is typically applied ahead of an active wildland fire to stop or slow its spread, in order to allow ground-crew to safely build a fire line. Retardants can be applied aerially via fixed or rotor wing aircraft. Ground applied retardants are used to annually pretreat fire-prone areas such as utility and transportation rights-of-way in order to reduce their potential for ignition. These retardants are applied by ground-crews using standard fire engines or dedicated ground-applied retardant units.
>
> Fortress is our recently acquired fire retardant company dedicated to developing and producing a portfolio of environmentally friendly next-generation aerial and ground-applied fire retardant products to help prevent and combat wildfires. ***Fortress' approved long-term aerial and ground-applied fire retardant formulations have been developed using magnesium chloride supplied from our Ogden facility***. We plan to further expand

5

our suite of retardants, which provide unique properties for fighting wildfires and abating fire risk.

> ***Our fire retardant business currently has one primary customer, the USFS, and we supply them with USFS-qualified fire retardant***. Fortress has the only alternative to fertilizer-based fire retardants and is the first entrant to the fire retardant industry in over 20 years to have aerial products added to the USFS Qualified Product List. ***The USFS testing is a standard that many municipalities, states and countries have adopted for ensuring fire retardant is effective, safe and environmentally friendly***. There is currently one other supplier of aerial fire retardants in the markets we have entered as the barriers to enter the fire retardant industry are high. As of the date of this report, we have generated all of our fire retardant revenue in the U.S. and it is not material in comparison to our Salt and Plant Nutrition segments.

(Emphasis added).

21. The statement in ¶ 20 was materially false and misleading because it overstated the quality of Fortress's proprietary fire retardants. Further, it gave the impression that it was a settled fact that Fortress's fire retardants were both safe and effective, when that was not settled and there would be further testing which could jeopardize Fortress's commercial prospects.

22. The 2023 Annual Report contained the following risk disclosure about implementation of the Company's business strategies:

> ***We may not successfully implement our strategies.***
>
> Our success depends, to a significant extent, on successful implementation of our business strategies, including the development of our lithium salt or lithium chloride brine and LCE resources, ***the successful commercialization of Fortress North America's portfolio of next generation fire retardants***, our cost savings initiatives, our continuous improvement initiatives and any other strategies described in the "Business" section of this report. ***We cannot assure that we will be able to successfully implement our strategies or, if successfully implemented, we may not realize the expected benefits of our strategies***. Recently, we have suspended indefinitely any further investment in our lithium project beyond certain already committed items associated with the early stages of construction of our commercial scale demonstration unit and are considering seeking partners at the project level with an aim of reducing our share of capital costs and lowering execution risk in the event that the project is restarted. Any continued investment or such partnership would be conditioned on the achievement of an acceptable and predictable regulatory framework in Utah governing the production of lithium on the Great Salt Lake. We cannot make any assurance that we will continue investments in our lithium project or whether we will enter into any partnership, and if so, on what terms.

(Emphasis added).

23. The statement in ¶ 22 was materially false and misleading because it understated the risk of Fortress's portfolio of fire retardants not succeeding, given that further testing would be done on its fire retardants which could jeopardize their commercial prospects.

24. The 2023 Annual Report contained the following risk disclosure about competition:

*Our products face strong competition and if we fail to successfully attract and retain customers and invest in capital improvements, productivity, quality improvements and product development, sales of our products could be adversely affected.*

We encounter strong competition in many areas of our business and our competitors may have significantly more financial resources than we do. Competition in our product lines is based on a number of factors, including product quality and performance, logistics (especially in Salt distribution), brand reputation, price and quality of customer service and support. Many of our customers attempt to reduce the number of vendors from which they purchase in order to increase their efficiency. To remain competitive, we need to invest in manufacturing, productivity, product innovation, marketing, customer service and support and our distribution networks. We may not have sufficient resources to continue to make such investments or maintain our competitive position. We may have to adjust our prices, strategy, product innovation, distribution or marketing efforts to stay competitive. *In addition, our fire retardant business currently has one primary customer, the USFS. If the USFS were to choose not to renew commercial agreements with us or reduce their spend on our fire retardant products, that business would be adversely affected*.

(Emphasis added).

25. The statement in ¶ 24 was materially false and misleading because it understated the risk of the USFS choosing not to renew commercial agreements to use fire retardants produced by Compass Minerals, considering that further testing would be done on the retardants' safety and efficacy.

26. On February 8, 2024, Compass Minerals filed with the SEC its quarterly report on Form 10-Q for the period ended December 31, 2023 (the "1Q24 Report"). Attached to the 1Q24 Report were certifications pursuant to SOX signed by Defendants Dowling and Crenshaw attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's

7

internal control over financial reporting and the disclosure of all fraud.

27. The 1Q24 Report incorporated by reference the risk disclosures identified in the 2023 Annual Report.

28. As noted in ¶ 23 and 25, the 2023 Annual Report contained materially false and misleading risk disclosures.

29. On the accompanying 1Q24 earnings call, Defendant Crenshaw made the following statement:

> Regarding Fortress, subsequent to our last earnings call, which occurred in November, the U.S. Forest Service changed the solicitation contract requirements for the calendar '24 contract and this has resulted in delays in the negotiation and finalization of a contract for the '24 fire season, which starts in the April, May timeframe. *We continue to expect to have a finalized contract prior to deployment for the upcoming fire season*. As a reminder, we do not have anything currently baked into our '24 guidance for the calendar '24 U.S. Forest Service contract. Accordingly, we are leaving guidance unchanged with respect to what we've included in for Fortress at this time. Once our contract is finalized, we will adjust our guidance appropriately.

(Emphasis added).

30. The statement in ¶ 29 was materially false and misleading because it overstated the likelihood of the USFS choosing to renew with Compass Minerals.

31. The 1Q24 Earnings Call included the following exchange between an analyst and Defendants Hood and Crenshaw, about the Company's purported reasons for the delay for a contract between the USFS and Fortress, to provide retardants for the 2024 forest fire season:

> **Analyst**: And then lastly, you talked about some changes in requirements from the US Forest Service affecting your Fortress business. But I couldn't tell whether you thought that it actually delayed anything. What you said is you expected to have your paperwork in order before the 2024 fire season. So if that's true, does the delay really make no difference?
>
> **Hood**: So the delay, just to give a little bit more color on that. The original solicitation from the US Forest Service was issued in late September. It took them until mid December to issue a final revised solicitation, and the solicitation deadline was then January 10th. So it absolutely pushed back the contracting process, in total. However, we are pleased since January 10th when we were able to start the negotiations, we're pleased with the progress and the engagement that we're seeing from US Forest Service. Keep in mind that previously the Forest Service was dealing with one sole source supplier for over two decades. So thinking about how to integrate another supplier, both from a contractual standpoint as well

as in the field has been quite challenging for them, but however, we are supporting them in those efforts. And again, we're pleased with the engagement that we've received since the submission deadline.

**Crenshaw**: And Jeff, from an earnings perspective, you're exactly right. There's no change. We entered into this year not assuming EBITDA for 2024 for Fortress until we get the contract. When we get that contract, which we fully expect, you should expect us to raise our guidance to reflect the profitability. And so we have been conservative in not speculating, but you should expect that we will raise our guidance. And there's no change there, it's just a little bit delayed.

32. The statements made by Defendants Hood and Crenshaw in ¶ 31 were materially false and misleading because they overstated the likelihood that the USFS would contract with Fortress to use its proprietary fire retardants.

33. The statements contained in ¶¶ 20, 22, 24, 27, 29, and 31 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Compass Minerals overstated the likelihood that it would be awarded a renewed U.S. Forest Service contract for the use of its proprietary magnesium chloride-based aerial fire retardants for the 2024 fire season, as a result of safety issues presented by its fire retardant; (2) Compass Minerals materially overstated the extent to which testing had confirmed that its fire retardants were safe; and (3) as a result, Defendants' statements about its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all times.

## THE TRUTH EMERGES

34. On March 25, 2024, before the market opened, the Company issued a press release entitled "Compass Minerals Announces the Company Will Not Secure a USFS Contract to Supply Magnesium Chloride-Based Aerial Fire Retardants for the 2024 Fire Season." This announcement stated the following, in full:

Compass Minerals (NYSE: CMP), *a leading global provider of essential minerals, today announced that the U.S. Forest Service (USFS) has informed the company that it will*

9

> *not be entering into a contract for the use of magnesium chloride-based aerial fire retardants for the 2024 fire season*.
>
> During *scheduled winter airtanker inspections as part of the USFS' Integrated Operational Field Evaluation (I-OFE), it was discovered that certain airtankers that had flown Fortress North America's (Fortress') proprietary, magnesium chloride-based aerial fire retardants revealed significant signs of corrosion in areas where build-up of the retardant had occurred. The findings from this more extensive inspection raised aircraft safety concerns*, prompting the USFS' decision to inform Compass Minerals on March 22, 2024, that it would be "unable to define the scope and associated terms and conditions of a new contract" with the company until the National Transportation Safety Board (NTSB) and National Institute of Standards and Technology (NIST) conducted a coordinated, independent assessment of the findings.
>
> ***"While we are disappointed with the findings of the initial inspection, we share the USFS' prioritization of safety above all other factors,"*** said Edward C. Dowling Jr., president and CEO. "As we work collaboratively with the USFS, NTSB and NIST on the more detailed assessment to be conducted, we have to assume based on this new information *that Fortress' proprietary, magnesium chloride-based aerial fire-retardant formulation will not be utilized for the foreseeable future in the fight against wildfires."*
>
> As previously announced, in December 2022, Fortress became the first new company in over two decades to have long-term aerial fire retardants added to the USFS' Qualified Product List (QPL). Fortress' FR-100 Powder and FR-200 Liquid Concentrate products met and exceeded the USFS' rigorous testing criteria in such categories as environmental effects and toxicity to aquatic and mammalian species, corrosion on a variety of aircraft metals, burn retardation efficacy and the completion of a live wildfire operational field evaluation. In May 2023, Fortress entered into a contract with the USFS to provide up to five mobile-deployed fire-retardant air tanker bases during the 2023 wildfire season. The company was in the process of negotiating a USFS contract for the 2024 wildfire season when the new corrosion concerns were identified.
>
> The company is currently working to achieve full qualification of proprietary, non-magnesium chloride-based aerial fire-retardant products.

(Emphasis added).

35. On this news, the price of Compass Minerals stock fell $3.00 per share, or 17.09%, to close at $14.55 on March 25, 2024. The next day, Compass Minerals stock fell a further $0.86 per share, or 5.91%, to close at $13.69.

36. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and the other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Compass Minerals securities publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

38. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

39. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

41. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false filings;
- whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

43. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's securities met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- as a public issuer, the Company filed public reports;

- the Company communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

44. Based on the foregoing, the market for the Company securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the common units, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

45. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

**COUNT I**
**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

46. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47. This Count asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

48. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

49. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

50. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or

14

dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

51. Individual Defendants, who are or were senior executives and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company's personnel to members of the investing public, including Plaintiff and the Class.

52. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

53. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

54.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

55.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

56.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's misstatement of revenue and profit and false financial statements.

58.     As officers of a public business, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

59.     Because of their positions of control and authority as senior executives and/or directors, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class

Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Company securities.

60. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 24, 2024                    **THE ROSEN LAW FIRM, P.A.**

/s/ Brent J. LaPointe
Brent J. LaPointe, Esq., D. Kan # 78539

275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: blapointe@rosenlegal.com

*Counsel for Plaintiff*