**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| JOHN VALENTINE and PAUL O'RENICK, individually and on behalf of all others similarly situated, | Case No: 24-cv-02165-EFM |
| | CLASS ACTION |
| Plaintiffs, | |
| v. | |
| COMPASS MINERALS INTERNATIONAL, INC., KEVIN S. CRUTCHFIELD, EDWARD C. DOWLING, JR., LORIN CRENSHAW, JENNY HOOD and JAMES STANDEN, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.      BACKGROUND OF THE LITIGATION AND SETTLEMENT .................................. 1

II.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
        SETTLEMENT PURPOSES ................................................................................ 2

        A.      Numerosity – Rule 23(a)(1) .................................................................. 3

        B.      Commonality – Rule 23(a)(2) ................................................................ 3

        C.      Typicality – Rule 23(a)(3) .................................................................... 4

        D.      Adequacy – Rule 23(a)(4) .................................................................... 5

        E.      Predominance and Superiority – Rule 23(b)(3) ...................................... 6

III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............................ 7

        A.      Plaintiffs and Lead Counsel Are Adequate Representatives ................................. 8

        B.      The Settlement is the Product of Informed, Arm's-Length Negotiations ............. 9

        C.      The Relief Provided to the Settlement Class is Adequate .................................... 9

                1.      The Costs, Risks, and Delay of Trial and Appeal ................................... 9

                2.      Other Factors Established by Rule 23(e)(2)(C) Support Approval ......... 11

                        a)      The Method of Distributing Relief and Processing Claims .................. 11

                        b)      Proposed Attorneys' Fees .................................................................... 11

                        c)      Other Agreements ................................................................................ 12

        D.      All Settlement Class Members Are Treated Equitably ........................................ 12

        E.      The Settlement is Reasonable Considering the Range of Possible Recoveries .. 13

        F.      The Judgment of the Parties Favors Preliminary Approval of the Settlement.... 13

IV.     THE FORM AND METHOD OF THE NOTICE SHOULD BE APPROVED .............. 14

V.      CONCLUSION ................................................................................................ 15

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Home Assurance Co. v. Cessna Aircraft Co.*,
  551 F.2d 804 (10th Cir. 1977) ................................................................................... 7

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................... 6

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988) ................................................................................................... 7

*Cagan v. Anchor Sav. Bank FSB,*
  1990 WL 73423 (E.D.N.Y. May 12, 1990) .............................................................. 11

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........................................................... 12

*Circle K Stores,*
  2021 WL 4947238 .............................................................................................. 12, 13

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ..................................................................................... 10

*City P'ship Co. v. Jones Intercable, Inc.*,
  213 F.R.D. 576 (D. Colo. 2002) ................................................................................. 2

*Crocs*,
  2013 WL 4547404 .............................................................................................. 13, 14

*Elston v. Horizon Glob. Americas, Inc.*,
  2020 WL 6318660 (D. Kan. Oct. 28, 2020) ............................................................. 12

*Gundrum v. Cleveland Integrity Servs., Inc.*,
  2017 WL 3503328 (N.D. Okla. Aug. 16, 2017) ....................................................... 12

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) .............................................................................. 15

*In re Crocs, Inc. Sec. Litig.*,
  306 F.R.D. 672 (D. Colo. 2014) ................................................................................. 6

*In re Crocs, Inc. Sec. Litig.*,

2014 WL 4670886 (D. Colo. Sept. 18, 2014) ................................................................ 12

*In re Dep't of Energy Stripper Well Exemption Litig.*,
   653 F. Supp. 108 (D. Kan. 1986) ..................................................................................... 7

*In re HealthSouth Corp. Sec. Litig.*,
   334 F. App'x 248 (11th Cir. 2009) ................................................................................. 12

*In re Ribozyme Pharm., Inc. Sec. Litig.*,
   205 F.R.D. 572 (D. Colo. 2001) ......................................................................... 3, 4, 5, 6

*Jones v. Nuclear Pharmacy, Inc.*,
   741 F.2d 322 (10th Cir. 1984) ......................................................................................... 8

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015) ........................................................................... 6

*Lane v. Page*,
   862 F. Supp. 2d 1182 (D.N.M. 2012) .......................................................................... 9, 10

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) .................................................................................. 9, 14

*Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*,
   2010 WL 5387559 (D. Colo. Dec. 22, 2010) ................................................................. 12

*Monroe Cnty. Ees' Ret. Sys. v. S. Co.*,
   332 F.R.D. 370 (N.D. Ga. 2019) ...................................................................................... 3

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................................................................ 10

*Nakkhumpun v. Taylor*,
   2015 WL 6689399 (D. Colo. Nov. 3, 2015) ............................................................... 4, 14

*Peace Officers' Annuity & Benefit Fund v. DaVita Inc.*,
   2021 WL 1387110 (D. Colo. Apr. 13, 2021) .............................................................. 8, 13

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) ......................................................................................................... 7

*Rhodes v. Olson Assocs., P.C.*,
   308 F.R.D. 664 (D. Colo. 2015) .................................................................................. 8, 13

*Schwartz v. Celestial Seasonings,*
   178 F.R.D. 545 (D. Colo. 1998) ................................................................................... 3, 4

Settlement Class Members. *Molycorp*,
  2017 WL 4333997 ..................................................................................................... 8

*Tennille v. Western Union Co.,*
  785 F.3d 422 (10th Cir. 2015) ........................................................................... 5, 14

*Yedlowski v. Roka Bioscience, Inc.,*
  2016 WL 6661336 (D.N.J. Nov. 10, 2016) ............................................................. 6

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... passim

iv

Lead Plaintiff John Valentine and Named Plaintiff Paul O'Renick (together, "Plaintiffs"), hereby move this Court, pursuant to Fed. R. Civ. P. 23, for an order: (i) preliminarily approving the proposed Settlement, including the Plan of Allocation (the "Plan"); (ii) certifying the proposed Settlement Class for settlement purposes; (iii) approving the form and manner of providing notice of the Settlement to the Settlement Class; and (iv) scheduling a hearing to consider final approval of the Settlement and approval of the Plan and Lead Counsel's motion for attorneys' fees and reimbursement of expenses and a contribution award to Plaintiffs.

Counsel achieved the Settlement following lengthy arm's-length negotiations.[1] The Settlement consists of a $4.9 million all-cash payment providing an immediate and substantial recovery for the Settlement Class. This is a favorable result in light of significant obstacles that Plaintiffs face in proving liability and damages. Plaintiffs believe that the proposed Settlement is fair, reasonable, and adequate, and in the Settlement Class's best interest. Similarly, the proposed notice satisfies the requirements imposed by Fed. R. Civ. P. 23, the PSLRA, and due process.

## I.    BACKGROUND OF THE LITIGATION AND SETTLEMENT

Plaintiff Valentine commenced this Action on April 24, 2024, filing a putative securities class action complaint against Defendants Compass Minerals International, Inc. ("Compass Minerals"), Kevin S. Crutchfield, Edward C. Dowling, Jr., Lorin Crenshaw, and Jenny Hood alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Dkt. No. 1. On December 12, 2024, the Court appointed Plaintiff Valentine as Lead Plaintiff and The Rosen Law Firm, P.A. as Lead Counsel. Dkt. No. 23.

---

[1] Unless otherwise indicated, all capitalized terms have the same meanings as set forth in the Stipulation of Settlement, dated June 30, 2025 (the "Stipulation").

1

On February 10, 2025, Plaintiffs filed the Amended Complaint (the "Complaint"), adding Named Plaintiff O'Renick and Defendant Standen. Dkt. No. 24. The Complaint alleges a string of misstatements and omissions in Compass Minerals' public disclosures concerning Fortress North America ("Fortress"), and its fire retardant products.

On April 2, 2025, Defendants filed an Unopposed and Consented to Motion for Extension of Time to File a Motion to Dismiss the Amended Complaint, noting that the Complaint consists of 184 paragraphs, spans 64 pages and asserts federal securities claims challenging numerous statements contained in more than eleven public disclosures. Dkt. No. 27. That motion was granted on April 3, 2025. Dkt. No. 28.

Meanwhile, the Parties were engaging in settlement discussions. On May 1, 2025, the Parties filed a joint motion to stay, informing the Court that the Parties have reached an agreement in principle to settle the Action on a class-wide basis, subject to the drafting of a more detailed class settlement agreement and the submission of preliminary approval papers. Dkt. No. 29. On May 2, 2025, the Court granted the motion, ordering counsel to file the motion for preliminary approval of the settlement by June 30, 2025. Dkt. No. 30.

## II.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

In granting preliminary settlement approval, the Court should also certify the Settlement Class for purposes of the Settlement under Fed. R. Civ. P. 23(a) and (b)(3). Courts in this Circuit have consistently certified class actions in securities cases to provide redress for injured investors. *See, e.g., Local 295 IBT Emp. Group. Welfare Fund v. Compass Minerals, Int'l, Inc. et al.,* 22-cv-02432 (D. Kan. Apr. 7, 2025) (EFM) Dkt. No. 137 at 1 (preliminarily certifying class in securities class action) *City P'ship Co. v. Jones Intercable, Inc.,* 213 F.R.D. 576, 581 (D. Colo. 2002)

(certifying class, noting "securities claims are particularly well suited for class action status because they allow for the policies behind the securities laws to be enforced in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation."); *Schwartz v. Celestial Seasonings,* 178 F.R.D. 545, 550 (D. Colo. 1998) (class actions favored in securities cases). The proposed Settlement Class, to which the Parties have stipulated, consists of all Persons who purchased or otherwise acquired Compass Minerals securities during the Class Period of February 8, 2023 to March 26, 2024, both dates inclusive.[2]

### A. Numerosity – Rule 23(a)(1)

Rule 23(a)(1) requires the class to be "so numerous that joinder of all class members is impracticable." A securities class of hundreds of purchasers or more is assumed to satisfy the numerosity requirement. *In re Ribozyme Pharm., Inc. Sec. Litig.*, 205 F.R.D. 572, 577-8 (D. Colo. 2001). Accordingly, the numerosity requirement is assumed to be satisfied in cases involving a nationally traded security. *Schwartz*, 178 F.R.D. at 550. Compass Minerals was traded on the New York Stock Exchange, an active national market, during the Class Period, supporting the allegation that there were at least hundreds of thousands of shares of Compass Minerals securities traded weekly. *See* Complaint ¶162; *Monroe Cnty. Ees' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 382 (N.D. Ga. 2019) ("securities trading on national exchanges like the NYSE 'are often presumed to be traded on an efficient market'"). As there are likely hundreds, if not thousands, of Settlement Class Members, numerosity is met.

### B. Commonality – Rule 23(a)(2)

---

[2] Excluded from the Settlement Class are (1) Defendants and their immediate families; (2) the present and former officers and directors of Compass Minerals; and (3) any entity in which any of the Defendants, or any person excluded under this subsection, has or had a controlling interest at all relevant times. Stipulation ¶1.36.

3

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[E]ven a single [common] question" of law or fact will suffice to establish commonality. *Nakkhumpun v. Taylor*, 2015 WL 6689399, at \*4 (D. Colo. Nov. 3, 2015). The claims of the potential class members need not be factually identical. *Schwartz,* 178 F.R.D. at 551. Here, Plaintiffs allege that Defendants made uniform misrepresentations and omissions to the investing public concerning the Fortress fire retardant that resulted in an artificially inflated market price for Compass Minerals securities. Thus, virtually all of the questions of law or fact at issue are common to Plaintiffs and all other purchasers of Compass Minerals securities during the Class Period, including whether Defendants made material misrepresentations or omissions concerning Fortress fire retardant, and the extent of damages. These are quintessential questions regularly found to be "common questions of law or fact" in securities actions. *Schwartz,* 178 F.R.D. at 551. *Ribozyme*, 205 F.R.D. at 579. Therefore, commonality is satisfied.

### C.    Typicality – Rule 23(a)(3)

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). "So long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or law which unite the class, the typicality requirement is satisfied." *Schwartz,* 178 F.R.D. at 551. Here, Plaintiffs' claims are typical of, if not identical to, the claims of the other Settlement Class Members. Plaintiffs allege that Defendants violated the Exchange Act by misrepresenting and omitting material facts concerning Fortress, and that the Settlement Class suffered losses from purchasing Compass Minerals securities at inflated prices. These claims are based upon the same facts and legal theories, and would be proven with the same evidence. Further, Plaintiffs are not

subject to any unique defenses that would make them atypical.  Thus, typicality is satisfied.

          **D.**       **Adequacy – Rule 23(a)(4)**

Under Rule 23(a)(4), Plaintiffs' adequacy is based on: (1) whether they have common interests with the unnamed members of the class; and (2) whether it appears that the representatives will vigorously prosecute the interest of the class through qualified counsel. *Ribozyme,* 205 F.R.D. at 578. "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Tennille v. Western Union Co.,* 785 F.3d 422, 430 (10th Cir. 2015) (citation omitted). Plaintiffs' interests are aligned with those of the Settlement Class. Plaintiffs purchased Compass Minerals securities during the Class Period and sustained losses as a result of the same alleged misrepresentations and omissions as other Settlement Class Members. Plaintiffs have the same objectives as other members of the Settlement Class: to seek recovery of damages suffered as a result of the alleged misrepresentations and omissions during the Class Period.

As to the adequacy of Lead Counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel has been involved in this action from its inception, vigorously litigating on behalf of Compass Minerals investors including by: conducting a pre-filing investigation; filing an initial complaint; retaining and supervising an investigator to conduct interviews with relevant witnesses; reviewing documents and government records concerning Compass Minerals and the fire retardant industry; drafting a detailed amended complaint; retaining an economic expert to assess damages; participating in settlement discussions

with Defendants; formalizing the settlement; and filing the instant motion for preliminary approval. Lead Counsel are experienced securities class action attorneys capable of evaluating cases to determine when a settlement would be beneficial to the class, and when to continue litigating. Courts around the country have consistently found Lead Counsel to be well-suited as class counsel in securities class actions. *See, e.g., Yedlowski v. Roka Bioscience, Inc.,* 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"). Thus, the adequacy requirement is satisfied.

### E.    Predominance and Superiority – Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if the Court finds that "(i) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (ii) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Ribozyme,* 205 F.R.D. at 578.

**Predominance:** Predominance is "readily met" in cases asserting violations of the securities laws. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 689 (D. Colo. 2014) (noting defendants' material misrepresentations and omissions predominate as they are "unaffected by the particularized conduct of individual class members."). Plaintiffs allege Defendants made material misrepresentations and omissions in the Class Period, artificially inflating the price of Compass Minerals securities. The issues of law and fact that flow from this course of conduct predominate over any individual issues. *Ribozyme,* 205 F.R.D. at 578-79 (common issues predominate where liability common to all class members).

6

**Superiority:** The class action mechanism is the superior method for resolving this Action as courts routinely find superiority satisfied where: (i) many in the class of investors likely suffered small losses, making it impracticable to proceed with their claims as individuals; (ii) use of the class vehicle will achieve judicial economy, as well as prevent inconsistent judgments; and (iii) there are not other §10(b) actions involving the same alleged fraud, and the court foresees no particular difficulties with adjudicating the class action. *See, e.g., Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985) (class action mechanism allows plaintiffs to pool claims that would otherwise be uneconomical to litigate individually). It is well recognized that class actions are a particularly appropriate means for resolving securities actions. *Basic Inc. v. Levinson,* 485 U.S. 224, 250 (1988) (a class action is the most favorable means of adjudicating securities claims).

## III.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The Tenth Circuit has long acknowledged the strong public policy favoring settlements. *Am. Home Assurance Co. v. Cessna Aircraft Co.,* 551 F.2d 804, 808 (10th Cir. 1977) ("[t]he inveterate policy of the law is to encourage, promote and sustain the compromise and settlement of disputed claims"). "Particularly in complex cases the litigants should be encouraged to determine their respective rights between themselves." *In re Dep't of Energy Stripper Well Exemption Litig.,* 653 F. Supp. 108, 115 (D. Kan. 1986). Where the parties propose to resolve an action through class-wide settlement, they must seek the Court's approval. Pursuant to Rule 23(e)(1), the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

To assess if a settlement is fair, reasonable, and adequate, the Tenth Circuit looks to: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions

of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable" *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). In addition, courts must evaluate the additional factors of Rule 23(e)(2), which are:

> (2) ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*Peace Officers' Annuity & Benefit Fund v. DaVita Inc.*, 2021 WL 1387110, at *3 (D. Colo. Apr. 13, 2021). Due to the overlap of these considerations, "a court considers the Rule 23(e)(2) factors as the main tool in evaluating the propriety of the settlement but still addresses the Tenth Circuit's factors." *Id*. A settlement should be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Rhodes v. Olson Assocs., P.C.,* 308 F.R.D. 664, 666 (D. Colo. 2015).

### A.   Plaintiffs and Lead Counsel Are Adequate Representatives

As detailed in Section II, Plaintiffs and Lead Counsel have adequately represented the Settlement Class throughout the litigation and settlement of this Action. Plaintiffs' interest in obtaining the largest-possible recovery in this Action is firmly aligned with all Settlement Class

Members. *Molycorp,* 2017 WL 4333997, at \*7. Plaintiffs also retained highly experienced securities class action practitioners with a successful track record of representing investors in similar cases. Lead Counsel vigorously prosecuted the Settlement Class's claims and expended significant time and effort throughout the litigation. The adequacy requirement is thus satisfied.

### B.      The Settlement is the Product of Informed, Arm's-Length Negotiations

A proposed settlement is presumed to be fair and reasonable where the settlement "resulted from arm's length negotiations between experienced counsel." *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006). Here, Lead Counsel and Counsel for Defendants each have decades of experience negotiating complex securities class action settlements, and engaged in extended settlement discussions, which took place only after Lead Counsel had investigated the matter for over a year, researched and filed a detailed amended complaint and retained an economic expert. The settlement is the product of informed and arm's-length negotiation, supporting its fairness.

### C.      The Relief Provided to the Settlement Class is Adequate

#### 1.      The Costs, Risks, and Delay of Trial and Appeal

In assessing the Settlement, the Court should balance the benefits of the certain and immediate recovery for the Class against the risks of continued litigation. *Lucas*, 234 F.R.D. at 694. With prolonged litigation, "the parties would be without the guarantee of receiving even a dollar if this suit were to be resolved at a later time." *Lane v. Page*, 862 F. Supp. 2d 1182, 1249 (D.N.M. 2012). At the time the Settlement was reached, there was no guarantee that Plaintiffs' Complaint would have survived Defendants' motion to dismiss, much less that the case would have prevailed over Defendants' arguments at class certification, summary judgment, trial and appeal.

For instance, Defendants would likely argue that they had no duty to disclose the

information that Plaintiffs contend was necessary to make their Class Period statements not false and misleading, or that the risks associated with the Fortress fire retardant were amply disclosed to investors. In addition, Defendants could advance formidable arguments that could eliminate damages. While Plaintiffs believe that the maximum damages potentially recoverable in this case is around $60 million, that is Plaintiffs' best-case scenario assuming that Plaintiffs defeat all of Defendants' arguments concerning loss causation, which would likely have come down to a "battle of the experts." *See Lane v. Page*, 862 F. Supp. 2d 1182, 1248 (D.N.M. 2012) ("Damages also would have been reduced to a 'battle of the experts,' and 'it is virtually impossible to predict with any certainty which testimony would be credited.'").

Given this considerable risk, the Settlement – which confers a guaranteed and immediate payment of $4.9 million for the benefit of the Settlement Class – is a favorable result. Moreover, this approximately 8% recovery of the Settlement Class's best-case damages estimate is well within the range of approved recoveries in securities class actions. In 2024, securities class actions settled for a median recovery of 1.2% of damages, down from a median of 1.8% for the three years prior.[3] The Settlement here is reasonable especially in light of the substantial risk that Plaintiffs might recover nothing absent a settlement. *See e.g., City of Detroit v. Grinnell Corp*., 495 F.2d 448, 455 n.2 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000) ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc*., 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement

---

[3] E. Flores & S. Starykh, *Recent Trends In Securities Class Action Litigation: 2024 Full-Year Review*, at 27 (Fig. 24), *available at*: https://www.nera.com/content/dam/nera/publications/2025/PUB_2024_Full-Year_Sec_Trends_0122.pdf.

amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair"); *Cagan v. Anchor Sav. Bank FSB,* 1990 WL 73423, at *12-13 (E.D.N.Y. May 12, 1990) (approving settlement which amounted to 1.9% of maximum damages).

### 2.     Other Factors Established by Rule 23(e)(2)(C) Support Approval

Under Rule 23(e)(2)(C), courts consider whether the settlement relief is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports preliminary approval.

### a)   The Method of Distributing Relief and Processing Claims

As demonstrated in Section IV, the method for distributing relief to eligible claimants and for processing Settlement Class Members' claims includes standard and effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Plaintiffs request that the Court appoint Strategic Claims Services ("SCS") as Claims Administrator. SCS has substantial experience administering securities settlements. If SCS is appointed it will, under Lead Counsel's guidance, process claims, allow Claimants an opportunity to cure any deficiencies or request the Court to review a denial of their Claim(s), and pay Authorized Claimants their pro rata share of the Net Settlement Fund pursuant to the Plan of Allocation set forth in the Long Notice.

### b)   Proposed Attorneys' Fees

The Notice explains that Lead Counsel will apply for attorneys' fees not to exceed one-third of the Settlement Amount and to recover out-of-pocket litigation expenses in an amount not to exceed $55,000. A request for attorneys' fees of one-third of the settlement amount is reasonable

11

in light of the work performed and the results obtained, and is well within the range of percentage fees that are regularly awarded in securities and contingency fee class actions in this Circuit.[4]

### c) Other Agreements

The Parties executed a standard supplemental agreement providing that if Settlement Class Members opt out such that the opt-outs reach a certain threshold, Defendants may terminate the Settlement. Stipulation ¶2.12. The terms of the Supplemental Agreement are kept confidential to avoid incentivizing investors to opt out solely to leverage the threshold to exact an individual settlement. *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out."); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.").

### D.     All Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not offer

---

[4] *See, e.g., Circle K Stores,* 2021 WL 4947238, at *8 ("one-third of the total settlement amount … is commonly found reasonable in class settlement."); *In re Crocs, Inc. Sec. Litig.*, 2014 WL 4670886, at *3 (D. Colo. Sept. 18, 2014) ("Courts in the Tenth Circuit have noted that the typical fee award in complex cases is around one third of the common fund."); *Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.,* 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class"); *Gundrum v. Cleveland Integrity Servs., Inc.*, 2017 WL 3503328, at *5 (N.D. Okla. Aug. 16, 2017) ("[T]he Court notes that contingent fees in the range of one-third of a common fund are frequently awarded in Rule 23 class settlements."); *Elston v. Horizon Glob. Americas, Inc.*, 2020 WL 6318660, at *7 (D. Kan. Oct. 28, 2020).

preferential treatment to any Settlement Class Member, including Plaintiffs. The Plan, as set out in the Long Notice, provides for distribution of the Net Settlement Fund to Authorized Claimants on a *pro rata* basis who suffered losses on their transactions in Compass Minerals securities during the Class Period, based on when each investor purchased, acquired, and/or sold the relevant shares. The Plan's formula for calculating recognized losses is the same for all Settlement Class Members. The Plan was developed by Lead Counsel after consulting with the Claims Administrator and Plaintiffs' damages expert. *DaVita*, 2021 WL 1387110, at *5 (finding equitable treatment as "[t]he settlement fund will be allocated to authorized claimants on a *pro rata* basis based on the relative size of their recognized claims."). Plaintiffs will also seek reimbursement of costs they incurred representing the Settlement class, as authorized by the PSLRA. *Id*., at *7 (awarding plaintiffs $10,000 each for PSLRA awards); *Circle K Stores,* 2021 WL 4947238, at *9 (service award to plaintiff "is typical in class action settlements.").

### E.        The Settlement is Reasonable Considering the Range of Possible Recoveries

Preliminary approval merely requires an initial fairness evaluation to ensure that the proposed Settlement "falls within the range of possible approval." *Rhodes,* 308 F.R.D. at 666.  As set forth above, the $4.9 million Settlement Amount is within the range of reasonableness to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class. Moreover, given the substantial risks in protracted litigation, the "immediate recovery outweighs the time and costs inherent in complex securities litigation, especially when the prospect is some recovery versus no recovery." *Crocs*, 2013 WL 4547404, at *12 In light of the significant risks faced by Plaintiffs, the Proposed Settlement is well within the range of reasonableness.

### F.        The Judgment of the Parties Favors Preliminary Approval of the Settlement

13

Preliminary approval is merited here given that "it is evident that the Settling Parties believe that the Settlement Agreement is fair and reasonable." *Crocs*, 2013 WL 4547404, at \*12. All Parties were represented by experienced securities practitioners. That the Parties and their counsel agreed to the Settlement favors preliminary approval. *Nakkhumpun*, 2015 WL 6689399, at \*6 ("Counsels' judgment as to the fairness of the agreement is entitled to considerable weight"). The Settlement is a product of informed negotiations among sophisticated parties and experienced counsel, meriting preliminary approval. *Kmart Corp.*, 234 F.R.D. at 695 (court recognizing unanimous support of settlement by experienced complex class action litigation counsel).

## IV.     THE FORM AND METHOD OF THE NOTICE SHOULD BE APPROVED

Class notice of a settlement must meet the requirements of Rules 23, the PSLRA, and due process. Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tennille v. Western Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015). The question is not whether actual notice was provided to all interested parties, but whether the notice is "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Id*.

The proposed Notice program includes: (a) emailing the Summary Notice or links to the Long Notice and Claim Form, or if no email address can be obtained, mailing the Postcard Notice, to Settlement Class Members who can be identified with reasonable effort; (b) posting the Long Notice, Claim Form, and Stipulation on a Settlement website; (c) upon request, mailing copies of the Long Notice and/or Claim Form; and (d) publishing the Summary Notice over *GlobeNewswire*. Courts routinely find these methods of notice sufficient. "The use of a combination of a mailed

14

post card directing class members to a more detailed online notice has been approved by courts."

*In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014).

The Long Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections can be lodged and how to request exclusion from the Settlement (and clearly states that all those who do not exclude themselves will be bound by the Settlement); (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a Claim Form; (e) a description of the Plan; (f) the fees and expenses to be sought by Lead Counsel and Plaintiffs; and (g) the necessary information to examine Court records. The Long Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Long Notice to those persons for whom the nominees held shares in a "street name." This closely tracks a model notice published by the Federal Judicial Center.[5]

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The Notice provides that Lead Counsel will apply for attorneys' fees of up to one-third of the Settlement Amount, reimbursement of expenses of up to $55,000, and an award to Plaintiffs of up to $17,500, in total, all to be paid from the Settlement Fund. Accordingly, the Notice program satisfy the requirements of the Federal Rules, the PSLRA, and due process.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court: preliminarily certify the Settlement Class; preliminary approve the Settlement; approve the Notice Plan; and set a Settlement Hearing.

---

[5] Ex. A-1, *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*. Available at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

Dated: June 30, 2025                    Respectfully submitted,

                                        **HOLLIS LAW FIRM**

                                        */s/ Jason Chambers*
                                        Jason Chambers, D. Kan. # 24927
                                        8101 College Blvd., Ste 260
                                        Overland Park, KS 66210
                                        Telephone: (913) 385-5400
                                        Fax: (913) 385-5402
                                        Email: jason@hollislawfirm.com

                                        **THE ROSEN LAW FIRM, P.A.**

                                        */s/ Phillip Kim*
                                        Phillip Kim (admitted pro hac vice)
                                        Michael Cohen (admitted pro hac vice)
                                        275 Madison Avenue, 40th Floor
                                        New York, New York 10016
                                        Telephone: (212) 686-1060
                                        Fax: (212) 202-3827
                                        Email: philkim@rosenlegal.com
                                               mcohen@rosenlegal.com

                                        *Lead Counsel for Plaintiffs and the Settlement Class*

16