# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| JOHN VALENTINE and PAUL O'RENICK, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>COMPASS MINERALS INTERNATIONAL, INC., KEVIN S. CRUTCHFIELD, EDWARD C. DOWLING, JR., LORIN CRENSHAW, JENNY HOOD and JAMES STANDEN,<br><br>    Defendants. | Case No: 24-cv-02165-EFM<br><br>CLASS ACTION |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND APPROVAL OF <u>PLAN OF ALLOCATION</u>**

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. THE CLASS SHOULD BE CERTIFIED PURSUANT TO RULES 23(a) AND 23(b)(3) ................................................................................................................................. 3

III. PLAINTIFFS HAVE PROVIDED NOTICE TO THE CLASS IN COMPLIANCE WITH RULE 23 AND DUE PROCESS ............................................................................. 3

IV. FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED .............................. 5

   1. Plaintiffs and Lead Counsel Have Adequately Represented the Class ........................ 7

   2. The Proposed Settlement was Negotiated at Arm's Length by Experienced Counsel 8

   3. The Settlement is Adequate In Light of the Costs, Risks, and Delay of Trial and Appeal ................................................................................................................................ 9

     a. Substantial Legal and Factual Questions Placed the Litigation's Outcome in Doubt .................................................................................................................... 9

     b. Immediate Recovery is More Valuable than the Mere Possibility of a More Favorable Outcome After Further Litigation ................................................. 11

   4. The Proposed Method for Allocating Relief is Effective ........................................... 12

   5. The Requested Attorneys' Fees and Expenses are Reasonable ................................. 13

   6. The Parties Have Entered Into the Standard Agreement Regarding Opt-Outs ....... 13

   7. Class Members are Treated Equitably ........................................................................ 14

   8. The Parties Believe the Settlement is Fair and Reasonable ...................................... 14

V. THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE .......... 14

VI. CONCLUSION ................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashley v. Reg'l Transp. Dist.*,
  2008 WL 384579 (D. Colo. Feb. 11, 2008) ............................................................................... 8

*Belote v. Rivet Software, Inc.*,
  2014 WL 3906205 (D. Colo. Aug. 11, 2014) ............................................................................ 5

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
  2020 WL 3288059 (D. Kan. June 18, 2020) ..................................................................... 6, 7, 11

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........................................................................... 13

*Diaz v. Romer*,
  801 F. Supp. 405 (D. Colo. 1992) ............................................................................................. 5

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .................................................................................................................. 3

*Gottlieb v. Wiles*,
  11 F.3d 1004 (10th Cir. 1993) ............................................................................................... 5, 6

*Hunter v. Blue Ridge Bankshares, Inc.*,
  346 F.R.D. 16 (E.D.N.Y. 2024) ............................................................................................... 8

*In re Crocs, Inc. Sec. Litig.*,
  306 F.R.D. 672 (D. Colo. 2014) ......................................................................................... 12, 15

*In re Crocs, Inc. Sec. Litig.*,
  2014 WL 4670886 (D. Colo. Sept. 18, 2014) ........................................................................... 9

*In re HealthSouth Corp. Sec. Litig.*,
  334 F. App'x 248 (11th Cir. 2009) .......................................................................................... 13

*In re King Res. Co. Sec. Litig.*,
  420 F. Supp. 610 (D. Colo. 1976) ....................................................................................... 5, 12

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
  271 F.R.D. 221 (D. Kan. 2010) ................................................................................................ 7

*In re: Motor Fuel Temperature Sales Pracs. Litig.*,
  872 F.3d 1094 (10th Cir. 2017) ............................................................................................... 6

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  997 F.3d 1077 (10th Cir. 2021) ............................................................................................... 6

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2019 WL 3001084 (S.D.N.Y. July 10, 2019) .......................................................................... 10

*In re Sprint Corp. ERISA Litig.*,
  443 F. Supp. 2d 1249 (D. Kan. 2006) ...................................................................................... 10

*In re Thornburg Mortg., Inc. Sec. Litig.*,
  912 F. Supp. 2d 1178 (D.N.M. 2012) ........................................................................................ 3

*Lane v. Page*,
  862 F. Supp. 2d 1182 (D.N.M. 2012) ...................................................................................... 10

*Local 295 IBT Emp. Group. Welfare Fund v. Compass Minerals, Int'l, Inc. et al.*,
  22-cv-02432 (D. Kan. July 31, 2025) ..................................................................................... 3, 5

*Lucas v. Kmart Corp.*,
  234 F.R.D. 688 (D. Colo. 2006) ........................................................................................ passim

*Marcus v. Kansas, Dep't of Revenue*,
  206 F.R.D. 509 (D. Kan. 2002) ................................................................................................. 7

*Marcys v. Kan. Dep't of Revenue*,
  209 F. Supp. 2d 1179 (D. Kan. 2002) ...................................................................................... 14

*McNeely v. Nat'l Mobile Health Care, LLC*,
  2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ........................................................................ 9

*Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs., Inc.*,
  2024 WL 98387 (D. Colo. Jan. 1, 2024) ........................................................................ 8, 14, 15

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
  2021 WL 1387110 (D. Colo. Apr. 13, 2021) ............................................................................. 5

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) .............................................................................................. 5, 6

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*,
  749 F.2d 1451 (10th Cir. 1984) ................................................................................................. 5

*Shaw v. Interthinx, Inc.*,
  2015 WL 1867861 (D. Colo. Apr. 22, 2015) ........................................................................... 11

*Tennille v. W. Union Co.*,
  785 F.3d 422 (10th Cir. 2015) .......................................................................................... 4, 9

*Voulgaris v. Array Biopharma Inc.*,
  2021 WL 6331178 (D. Colo. Dec. 3, 2021) ................................................................. 9, 11, 12

*Wilkerson v. Martin Marietta Corp.*,
  171 F.R.D. 273 (D. Colo. 1997) .......................................................................................... 5

## Statutes

15 U.S.C. § 77z-1(a)(7)........................................................................................................ 4

## Rules

Fed. R. Civ. P. 23 ........................................................................................................ passim

Pursuant to this Court's Preliminary Approval Order (Dkt. No. 35) and Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff John Valentine and Named Plaintiff Paul O'Renick (together, "Plaintiffs"), on behalf of themselves and the Class, respectfully submit this memorandum of law in support of their motion for: (i) final approval of the class action settlement (the "Settlement") between Plaintiffs and Defendants; and (ii) approval of the Plan of Allocation.

## I.     PRELIMINARY STATEMENT

Subject to the Court's approval, Plaintiffs have agreed to settle all claims in this Action in exchange for a cash payment of $4.9 million. This is a highly favorable result for the Settlement Class in light of the significant risks inherent in proceeding with this litigation. If approved, this Settlement will dispose of the Action in its entirety.

In addition to providing a meaningful, certain, and immediate monetary recovery for the Settlement Class, the Settlement avoids the substantial risks, expense and delay of continued litigation. As discussed here and in the accompanying Declaration of Michael Cohen,[1] Defendants have formidable arguments against liability and damages that could prevail pre-trial, at trial, or on appeal, leaving the Settlement Class with no recovery at all.

Further litigation would have resulted in considerable costs to both sides. At the time the Settlement was reached, the Parties had evaluated Plaintiffs' Amended Complaint, a pleading that represents the culmination of Plaintiffs' investigation that lasted about one year, and that consists of 184 paragraphs, spans 64 pages and asserts federal securities claims challenging numerous statements contained in more than eleven public disclosures. Had litigation continued, the Parties were facing a high-stakes motion to dismiss the Amended Complaint, followed by, had Plaintiffs

---

[1] The Court is respectfully referred to The Declaration of Michael Cohen ("Cohen Dec.") for a detailed description of: the history of the Action; the nature of the claims asserted; the uncertainties of continued litigation; and the terms of the Plan of Allocation. All citations to "¶ __" and "Ex. __" in this motion refer to paragraphs in, and exhibits to, the Cohen Dec.

prevailed, the significant costs of completing discovery, including the review and analysis of voluminous document productions and the taking of numerous fact and expert depositions. In addition, given the complex issues involved in this case, the Parties would be required to rely heavily on experts in various disciplines, further adding to the costs of the litigation.

Plaintiffs and Lead Counsel – who has extensive experience prosecuting securities class actions – believe that this Settlement is a favorable result and in the best interests of the Settlement Class. By the time the Settlement was reached, Plaintiffs had, among other things, filed an initial complaint; conducted a thorough factual investigation lasting about one year, which included interviews of former Company employees and government officials; drafted the detailed Amended Complaint reflecting the findings of that investigation; retained an economic expert to help assess damages sustained by the Class; and participated in extensive settlement discussions with Defendants. As a result, Plaintiffs and Lead Counsel were well-informed and aware of the strengths and weaknesses of their case when negotiating the Settlement.

The reaction of the Settlement Class thus far also supports the Settlement. In accordance with the Preliminary Approval Order (Dkt. No. 35), the Claims Administrator has caused notice of the Settlement to be disseminated to 46,395 potential Settlement Class Members. The Summary Notice was also published on *GlobeNewswire*. The deadline for Settlement Class Members to request to be excluded from the Settlement was October 7, 2025, and the deadline for Settlement Class Members to object to the Settlement is October 21, 2025. To date, there has not been a single objection or request for exclusion.[2]

For these reasons, and those set forth below, Plaintiffs believe that the Settlement is fair, reasonable, and adequate. Accordingly, Plaintiffs respectfully request that the Court grant final

---

[2] Plaintiffs will address any objections received after the date of this submission in Plaintiffs' reply papers to be filed with the Court on November 11, 2025.

approval of the Settlement and approve the Plan of Allocation.

## II.    THE CLASS SHOULD BE CERTIFIED PURSUANT TO RULES 23(a) AND 23(b)(3)

The "'Tenth Circuit has endorsed class actions as an appropriate means to resolve claims under the federal securities laws'" and allows class actions to be certified for purposes of effectuating a settlement. *See In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1233 (D.N.M. 2012) (certifying settlement class); *Local 295 IBT Emp. Group. Welfare Fund v. Compass Minerals, Int'l, Inc. et al.,* 22-cv-02432 (D. Kan. July 31, 2025) (EFM) Dkt. No. 148 at 1 (same).

As part of the Settlement, the Parties stipulated to the certification of the Class, including the appointment of Plaintiffs as Class Representatives and Lead Counsel as Class Counsel. *See* Stipulation, ¶¶3.0-3.1. In its Preliminary Approval Order, the Court found that "preliminarily and for purposes of this Settlement only, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied." Preliminary Approval Order at ¶3 (finding that the six factors of Rule 23(a) and (b)(3) had been satisfied). Nothing has changed with respect to these elements. Thus, for the reasons stated in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 34 at 2-7), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3) for purposes of effectuating the Settlement.

## III.    PLAINTIFFS HAVE PROVIDED NOTICE TO THE CLASS IN COMPLIANCE WITH RULE 23 AND DUE PROCESS

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2)(B) also provides that notice of a class settlement must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle &*

3

*Jacquelin*, 417 U.S. 156, 173 (1974) (class notice designed to fulfill due process requirements). Notice "'must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tennille v. W. Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015).

The notice program was carried out by the Court-appointed Claims Administrator, Strategic Claims Services ("SCS"), under the supervision of Lead Counsel. *See* Declaration of Josephine Bravata, attached as Ex. 1 to Cohen Dec. As noted above, 46,395 potential Settlement Class Members received notice of the Settlement. Bravata Dec. at ¶8. This includes 20,976 Postcard Notices mailed by the Claims Administrator and third-party nominees such as brokerage firms and banks, an additional 25,419 potential Settlement Class Members who received a direct link to the Long Notice and Claim Form from SCS or their nominees. *Id.* at ¶¶ 6-7. The Summary Notice was also published electronically over *GlobeNewswire*. *Id.* at ¶10.  In addition, a dedicated toll-free telephone number and website were established to assist potential Settlement Class Members with inquiries regarding the litigation, the Settlement, and the claims process. *Id*. at ¶11.

The Notice contains the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 77z-1(a)(7), including: (i) an explanation of the nature of the Action and claims asserted; (ii) the definition of the Settlement Class; (iii) a description of the key terms of the Settlement, including the consideration amount and the releases to be given; (iv) the Plan of Allocation; (v) the Parties' reasons for proposing the Settlement; (vi) a description of the attorneys' fees and expenses that will be sought; (vii) an explanation of Settlement Class Members' right to request exclusion from the Settlement Class and to object to the Settlement, the Plan of Allocation or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Settlement Class Members. The Notice also provides: instructions for submitting a Claim Form in

order to be eligible to receive a distribution from the Net Settlement Fund and relevant deadlines; and the contact information for Lead Counsel and SCS.  *See* Bravata Dec., Ex. A (Long Notice).

The mailing of Postcard Notices to Settlement Class Members who could be identified with reasonable effort, supplemented with notice in a widely-circulated publication and over a newswire, and a dedicated website, was "the best notice ... practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g., Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 1387110, at *2 (D. Colo. Apr. 13, 2021) (approving a substantially similar notice and method for distribution); *Local 295 IBT Emp. Group. Welfare Fund v. Compass Minerals, Int'l, Inc. et al.,* 22-cv-02432 (D. Kan. July 31, 2025) (EFM) Dkt. No. 148 at 1 (approving substantially similar notice program). Accordingly, the notice program here was sufficient.

## IV.      FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED

It is well-established in the Tenth Circuit that courts favor the settlement of controversies. *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997). This is especially true in complex class actions such as this. *See Belote v. Rivet Software, Inc.*, 2014 WL 3906205, at *3 (D. Colo. Aug. 11, 2014) ("settlements in class actions are favored"); *Diaz v. Romer*, 801 F. Supp. 405, 407 (D. Colo. 1992) (approving class action settlement, the court explained that a "consensual resolution of a dispute is always preferred"), *aff'd*, 9 F.3d 116 (10th Cir. 1993). Further, the authority to grant or deny approval of a proposed settlement lies within the sound discretion of the Court. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002); *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993). In exercising its discretion, the Court should not adjudicate the merits of the action or substitute its judgment for that of the parties who negotiated the settlement. *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) (the court "need not, and should not, decide the merits of the controversy").

5

In the Tenth Circuit, a class action settlement is entitled to final approval under Rule 23(e) where it is "fair, reasonable, and adequate." *Gottlieb,* 11 F.3d at 1014. To evaluate the fairness of a proposed class action settlement, courts consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 997 F.3d 1077, 1087 (10th Cir. 2021). In addition, courts in the Tenth Circuit consider the *Rutter* factors in evaluating whether a proposed settlement is fair, reasonable, and adequate. *See In re: Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1116-17 (10th Cir. 2017). These are:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter*, 314 F.3d at 1188.

Because the Tenth Circuit's *Rutter* factors "largely overlap" with the Rule 23(e)(2) factors, however, "with only the fourth factor not being subsumed," courts in this district now "consider[] the Rule 23(e)(2) factors as the main tool in evaluating the propriety of [a] settlement," while still addressing the *Rutter* factors. *Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020). The Court preliminarily determined that the Settlement meets these standards. Preliminary Approval Order, ¶5. As discussed below, the Court's initial disposition was

6

correct, as the Settlement satisfies each Rule 23(e)(2) and *Rutter* factor, warranting final approval.

### 1. Plaintiffs and Lead Counsel Have Adequately Represented the Class

Plaintiffs and Lead Counsel adequately represent the class when the plaintiffs' "interests do not conflict with those of [the] class members" and the plaintiffs and their counsel "prosecute the action vigorously." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 271 F.R.D. 221, 231 (D. Kan. 2010); *see also Chavez Rodriguez*, 2020 WL 3288059, at *2 ("Courts have analyzed the adequacy of representation by evaluating adequacy under Rule 23(a)(4)."). Here, there is complete alignment of interests because Plaintiffs suffered the same alleged injury from the same operative facts as other Class Members. There are no conflicting interests among Plaintiffs and the Class that bar Plaintiffs' representation of the Class. Plaintiffs, like all Class Members, share the same interest in obtaining the maximum recovery for the harm caused by the same alleged misconduct.

Lead Counsel's vigorous prosecution of this Action also supports a finding of adequacy. Prior to settling with Defendants, Lead Counsel, *inter alia*: conducted a pre-filing investigation; filed an initial complaint; retained and supervised an investigator to conduct interviews with relevant witnesses, including both former employees and former government personnel; reviewed documents and government appropriation records concerning Compass Minerals and the fire retardant industry; drafted the detailed Amended Complaint; retained an economic expert to assess damages; and participated in settlement discussions with Defendants, ultimately reaching settlement. *See* Cohen Dec., ¶¶24, 25, 45-47. Lead Counsel's efforts were instrumental in achieving this substantial recovery for the Class.

Courts also assess the adequacy of representation by evaluating the competence and skill of plaintiffs' counsel. *See Chavez Rodriguez*, 2020 WL 3288059, at *2 (Rule 23(a)(4) analysis includes examination of the adequacy of representation); *Marcus v. Kansas, Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) (Rule 23(a)(4) requires class counsel that are "'qualified,

experienced, and generally able to conduct the proposed litigation'"). Lead Counsel led the prosecution of this Action from its inception, filing the initial complaint, the Amended Complaint, and negotiating the proposed Settlement. Moreover, Lead Counsel have significant experience prosecuting complex securities class actions.[3] Lead Counsel's ability to take on this challenging case – without the benefit of a regulatory enforcement action or collateral litigation – and obtain this Settlement provides ample evidence of their adequacy to serve as Lead Counsel.

> **2.    The Proposed Settlement was Negotiated at Arm's Length by Experienced Counsel**

The second factor under Rule 23(e)(2)(B) overlaps with the first factor considered by the Tenth Circuit, which assesses whether "the . . . settlement was fairly and honestly negotiated." *Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs., Inc.*, 2024 WL 98387, at *2 (D. Colo. Jan. 1, 2024). "The fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist.*, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008). A proposed settlement is presumed to be fair and reasonable where the settlement "resulted from arm's length negotiations between experienced counsel." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).

Here, Lead Counsel and Counsel for Defendants each have decades of experience negotiating complex securities class action settlements, and engaged in extended settlement discussions. *See* Cohen Dec., ¶¶24-25. These settlement discussions took place only after Lead Counsel had investigated the matter for over a year, researched and filed a detailed Amended

---

[3] *See, e.g., Hunter v. Blue Ridge Bankshares, Inc.*, 346 F.R.D. 16, 26 (E.D.N.Y. 2024) (appointing Rosen Law Firm lead counsel in securities action, remarking that the firm has served as counsel in over seventy-five securities class actions); *see also* Cohen Dec., Ex. 4 (Rosen Law Firm resume).

Complaint and retained a well-regarded economic expert who analyzed the market and the appropriate methodologies for calculating damages. *See id*. Lead Counsel were well informed and prepared to negotiate the Settlement. The Settlement is the product of informed and arm's-length negotiation, confirming that it is fair and reasonable.

### 3. The Settlement is Adequate In Light of the Costs, Risks, and Delay of Trial and Appeal

The third factor considered under Rule 23(e)(2) instructs courts to consider the adequacy of the settlement relief in light of "the costs, risks, and delay of trial and appeal." *See* Fed. R. Civ. P. 23(e)(2)(C)(i). This factor overlaps with the combined second and third factors considered by the Tenth Circuit – whether "'serious legal and factual questions placed the litigation's outcome in doubt'" and whether "'the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation.'" *Tennille*, 785 F.3d at 434; *see also Voulgaris v. Array Biopharma Inc.*, 2021 WL 6331178, at *7-8 (D. Colo. Dec. 3, 2021), *aff'd,* 60 F.4th 1259 (10th Cir. 2023). Courts recognize that the class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *See McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008).

### a. Substantial Legal and Factual Questions Placed the Litigation's Outcome in Doubt

Plaintiffs are confident that their claims are meritorious and supported by the evidence, however, there are nonetheless serious questions of law and fact that made litigating risky. These risks "tip[] the balance in favor of settlement." *Id.* Courts in this Circuit and nationwide recognize that securities class actions are notoriously complex and present numerous hurdles at all stages of litigation. *See, e.g.*, *Array Biopharma*, 2021 WL 6331178, at *7 (noting that "[l]itigating an action under the PSLRA is not a simple undertaking'") (alteration in original); *In re Crocs, Inc. Sec.*

9

*Litig.*, 2014 WL 4670886, at *3 (D. Colo. Sept. 18, 2014) (same). This case is no exception.

As explained in the Cohen Declaration (¶¶27-32), Defendants have a number of credible arguments, against both liability and damages. For instance, Defendants would likely argue they had no duty to disclose the information that Plaintiffs contend was necessary to make their Class Period statements not false and misleading, or that the risks associated with the Fortress fire retardant were amply disclosed to investors. Defendants could also advance formidable arguments aimed at eliminating or at least decreasing damages. While Plaintiffs believe that the maximum damages potentially recoverable in this case is around $60 million, this is Plaintiffs' best-case scenario assuming that Plaintiffs defeat all of Defendants' arguments concerning loss causation, which would likely have come down to a "battle of the experts." *See Lane v. Page*, 862 F. Supp. 2d 1182, 1248 (D.N.M. 2012) ("Damages also would have been reduced to a 'battle of the experts,' and 'it is virtually impossible to predict with any certainty which testimony would be credited.'"). Concerning the alleged corrective disclosure – the Company's announcement that it would not be securing another government contract for the Fortress retardant – Defendants would likely claim it was not sufficiently "corrective," and would no doubt argue that Plaintiffs are required to disaggregate any losses unrelated to Plaintiffs' claims. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *20 (S.D.N.Y. July 10, 2019) ("plaintiff[s] ultimately will need to disaggregate confounding factors to prove economic loss").

Moreover, at the time the Settlement was reached, there was no guarantee that Plaintiffs' Complaint would have survived Defendants' motion to dismiss, much less would have prevailed over Defendants' arguments at class certification, summary judgment, trial and appeal. Plaintiffs would face substantial risk at each of these steps. *See, e.g., In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006) ("[E]ven if plaintiffs could have survived defendants' motions

10

for summary judgment, additional serious questions of law and fact also would have placed in doubt the value of the recovery plaintiffs might have been able to obtain."). In light of the complex legal and factual issues associated with continued litigation, there is an undeniable and substantial risk that, after years of continued litigation and additional delays, the Class could have received an amount significantly less than the Settlement Amount, or nothing at all.

b.   **Immediate Recovery is More Valuable than the Mere Possibility of a More Favorable Outcome After Further Litigation**

The complexity, uncertainty, expense, and likely duration of further litigation and possible appeals support approval of the proposed Settlement. "[I]n assessing a settlement, courts weigh the recovery 'against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation.'" *Array Biopharma*, 2021 WL 6331178, at \*8; *see also Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at \*3 (D. Colo. Apr. 22, 2015) ("'[A] cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair. Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment.'"). Litigating the Action to judgment, which has already been ongoing for around a year and a half, would also likely take several more years. *See Chavez Rodriguez*, 2020 WL 3288059, at \*3 (observing that "the costs and time of moving forward in litigation would be  substantial"); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 694 (D. Colo. 2006) ("If this case were to be litigated, in all probability it would be many years before it was resolved.").

Plaintiffs strongly believe that the benefits of settling this case now are far superior to the risk of continued litigation. Given the considerable risk, the Settlement – which confers a guaranteed and immediate payment of $4.9 million for the benefit of the Settlement Class – is a highly favorable result. This approximately 8% recovery of the Settlement Class's best-case

damages estimate is well within the range of recoveries that courts regularly approve in securities class actions. In 2024, securities class actions settled for a median recovery of 1.2% of damages, down from a median of 1.8% for the three years prior.[4] *See also In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014) (noting recovery of approximately 1.3% of amount of damages "is in line with the median ratio of settlement size to investor losses"); *Array Biopharma*, 2021 WL 6331178, at *6 ("[I]n the Tenth Circuit between 2010 and 2019 . . . the median settlement as a percentage of overall damages was 7.6% for similar cases.").

The substantial risk that, after years of delay and costly additional litigation, Plaintiffs could recover significantly less than the $4.9 million available now provides ample support for final approval of the Settlement. *See, e.g., Crocs*, 306 F.R.D. at 691 ("[I]mmediate recovery . . . outweighs the time and costs inherent in complex securities litigation, especially when the prospect is some recovery versus no recovery."); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. Aug. 10, 1976) ("In this respect, '[i]t has been held proper "to take the bird in the hand instead of a prospective flock in the bush."'""). Because the Settlement is adequate and in fact a highly favorable result for the Class, it should be finally approved.

### 4.    The Proposed Method for Allocating Relief is Effective

As discussed below described in §V, the proposed Plan of Allocation is effective pursuant to Rule 23(e)(2)(C)(ii). The proposed Plan of Allocation was prepared based on consultation with Plaintiffs' expert, and is designed to effectively and fairly allocate the Net Settlement Fund to Authorized Claimants. The Settlement provides a commonly utilized claims process, ensuring that only those Class Members who suffered damages and submit valid and timely claim forms will

---

[4] E. Flores & S. Starykh, *Recent Trends In Securities Class Action Litigation: 2024 Full-Year Review*, at 27 (Fig. 24), *available at*: https://www.nera.com/content/dam/nera/publications/2025/PUB_2024_Full-Year_Sec_Trends_0122.pdf.

receive their *pro rata* share of the Net Settlement Fund.

**5.      The Requested Attorneys' Fees and Expenses are Reasonable**

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment" as part of the settlement approval process. Fed. R. Civ. P. 23(e)(2)(c)(iii). As discussed in Lead Counsel's separate memorandum, Lead Counsel seeks an award of attorneys' fees in the amount of 33.3% of the Settlement Amount, along with reimbursement of Plaintiffs' Counsel's expenses incurred, and interest earned on these amounts. *See* Fee Memorandum, §III. The requested attorneys' fees are well within the range of fees awarded in this Circuit. *See id*. Plaintiffs' Counsel's expenses were reasonably incurred and necessary for the prosecution of this Action. Finally, as this is an all-cash, non-reversionary settlement and the entire Net Settlement Fund will be distributed to Class Members until it is no longer economically feasible to do so, there is no risk that Lead Counsel will be paid but Class Members will not.

**6.      The Parties Have Entered Into the Standard Agreement Regarding Opt-Outs**

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreements between the Parties so that the Court may determine the impact (if any) on the relief provided by the Settlement. As described in Plaintiffs' Preliminary Approval Memorandum, the Parties have entered into a standard supplemental agreement which provides that, in the event Class Member exclusions exceed an agreed-upon threshold, Defendants shall have the option to terminate the Settlement. Dkt. No. 34 at 12. These types of agreements are "standard in securities class action settlements and [therefore] ha[ve] no negative impact on the fairness" of the Settlement. *See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage

settlement and discourage third parties from soliciting class members to opt out.").

### 7. Class Members are Treated Equitably

Rule 23(e)(2)(D) considers whether Class Members are treated equitably. As discussed in §V and reflected in the Plan of Allocation set forth in the Notice, each Class Member that properly submits a valid Proof of Claim will receive their *pro rata* share of the Net Settlement Fund. *See* Bravata Dec., Ex. A (Notice at 4). This factor therefore weighs in favor of granting final approval of the Settlement. *See Maxar*, 2024 WL 98387, at *5 (factor supports approval where "[t]he settlement fund will be allocated to authorized claimants on a *pro rata* basis based on the relative size of their recognized claims").

### 8. The Parties Believe the Settlement is Fair and Reasonable

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight," and is a factor to be considered in granting approval to a class settlement. *Marcys v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002). Plaintiffs and Lead Counsel both strongly endorse the Settlement as fair and reasonable, and believe it is in the best interests of the Class. *See* Cohen Dec., ¶25; Declaration of Lead Plaintiff Valentine, attached as Exhibit 2 to the Cohen Dec.; Declaration of Named Plaintiff O'Renick, attached as Exhibit 3 to the Cohen Dec. Lead Counsel has extensive experience litigating securities class actions and only agreed to settle this Action after extensive investigation and analysis, including consulting an economic expert, and conducting rigorous arm's-length negotiations. Defendants and their counsel likewise concluded that the Settlement reflects a fair resolution of this Action.

## V. THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE

The proposed Plan of Allocation, set forth in the Notice, details how the Net Settlement Fund is to be allocated among Authorized Claimants. A plan of allocation should be approved where it is "fair, reasonable, and adequate." *See Kmart*, 234 F.R.D. at 695. In making this

determination, courts accord great weight to the recommendation of experienced counsel. *See id.* ("'An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.'").

The Plan of Allocation here was formulated based on the work of Plaintiffs' damages and economic expert and is consistent with Plaintiffs' allegations. It will distribute the Net Settlement Fund on a *pro rata* basis, as determined by the ratio that the Authorized Claimant's Recognized Claim Amounts bears to the total of the Recognized Claim Amounts of all Authorized Claimants. Calculation of a Recognized Claim Amount will depend upon the dates of the securities transactions at issue. Multiple courts have found this method of distributing settlement funds to be fair, reasonable and adequate. *See, e.g.*, *Maxar*, 2024 WL 98387, at *5 (approving plan of allocation based on *pro rata* distribution of recognized losses); *Crocs*, 306 F.R.D. at 692 (approving plan of allocation in securities class action settlement where funds will be allocated "*pro rata*" based on similar factors and plaintiffs "consulted with damages experts"). Notably, there have been no objections to the Plan of Allocation to date, which further supports its merit at final approval as well. *See id*. at 691 ("The reaction of the class members further supports the conclusion that the Settlement Agreement is fair.").

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) approve the proposed Settlement as fair, reasonable and adequate; and (2) approve the Plan of Allocation as fair and reasonable.

Dated: October 14, 2025                        Respectfully submitted,

                                               **HOLLIS LAW FIRM**

                                               */s/ Jason Chambers*
                                               Jason Chambers, D. Kan. # 24927
                                               8101 College Blvd., Ste 260

Overland Park, KS 66210
Telephone: (913) 385-5400
Fax: (913) 385-5402
Email: jason@hollislawfirm.com

**THE ROSEN LAW FIRM, P.A.**

*/s/ Phillip Kim*
Phillip Kim (admitted pro hac vice)
Michael Cohen (admitted pro hac vice)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
         mcohen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Settlement Class*

16