**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| JOHN VALENTINE and PAUL O'RENICK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMPASS MINERALS INTERNATIONAL, INC., KEVIN S. CRUTCHFIELD, EDWARD C. DOWLING, JR., LORIN CRENSHAW, JENNY HOOD and JAMES STANDEN,<br><br>Defendants. | Case No: 24-cv-02165-EFM<br><br>CLASS ACTION |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFFS**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   LEAD COUNSEL IS ENTITLED TO A REASONABLE PERCENTAGE OF THE
      COMMON FUND ................................................................................................... 3

III.  THE JOHNSON FACTORS CONFIRM THE REASONABLENESS OF LEAD
      COUNSEL'S FEE REQUEST ................................................................................. 5

    1.   The Results Obtained ................................................................................. 6

    2.   The Customary Fees in this District ......................................................... 7

    3.   The Time and Labor Required ................................................................... 7

      a.   The Amount of Time and Labor Dedicated by Lead Counsel Justifies the
           Requested Fee .................................................................................... 7

      b.   A Lodestar Cross-Check Supports the Requested Fee............................ 8

    4.   The Novelty and Difficulty of the Legal and Factual Questions.................. 9

    5.   The Skill Required and the Experience, Reputation and Ability of Lead Counsel .. 10

    6.   The Contingent Nature of the Fee ............................................................. 12

    7.   The Preclusion of Other Matters by Lead Counsel .................................... 13

    8.   The Undesirability of the Action ............................................................... 13

IV.   THE REACTION OF THE CLASS TO THE REQUESTED FEE FURTHER
      SUPPORTS ITS REASONABLENESS.................................................................. 13

V.    LEAD COUNSEL IS ENTITLED TO AN AWARD OF ITS REASONABLE
      LITIGATION EXPENSES ..................................................................................... 14

VI.   THE REQUESTED PSLRA AWARDS FOR PLAINTIFFS SHOULD BE
      APPROVED .......................................................................................................... 14

VII.  CONCLUSION ..................................................................................................... 15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ............................................................................................................ 3

*Blum v. Stenson*,
  465 U.S. 886 (1984) ............................................................................................................ 3

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................................ 3

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cnty.,*
  *Okla.*, 8 F.3d 722 (10th Cir. 1993) .................................................................................... 14

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988) .......................................................................................... 11

*China Agritech, Inc. v. Resh*,
  138 S. Ct. 1800 (2018)........................................................................................................ 13

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)..................................................................... 11

*Gottlieb v. Barry*,
  43 F.3d 474 (10th Cir. 1994) .............................................................................................. 4

*Gundrum v. Cleveland Integrity Servs., Inc.*,
  2017 WL 3503328 (N.D. Okla. Aug. 16, 2017)................................................................... 7

*In re Bank of Am. Wage & Hour Emp. Litig.*,
  2013 WL 6670602 (D. Kan. Dec. 18, 2013) ...................................................................... 14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .............................................................................................. 10

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005) ................................................................................................ 5

*In re Charter Commc'ns, Inc.*,
  2005 WL 4045741 (E.D. Mo. June 30, 2005) ..................................................................... 9

*In re Copley Pharm., Inc.*,
  1 F. Supp. 2d 1407 (D. Wyo. 1998) ..................................................................................... 5

*In re Crocs, Inc. Sec. Litig.*,
   2014 WL 4670886 (D. Colo. Sept. 18, 2014)........................................................ passim

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
   2021 WL 5369798 (D. Kan. Nov. 17, 2021)................................................................ 4

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ........................................................................................ 5

*In re Miniscribe Corp.*,
   309 F.3d 1234 (10th Cir. 2002) ................................................................................. 8

*In re N.M. Indirect Purchasers Microsoft Corp. Antitrust Litig.*,
   149 P.3d 976 (N.M. Ct. App. 2006) .......................................................................... 4

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   2006 WL 8429707 (D. Colo. Sept. 29, 2006).............................................................. 8

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   No. 17-ML-2792-D, 2020 WL 9936692 (W.D. Okla. June 11, 2020)........................ 9

*In re St. Paul Travelers Sec. Litig.*,
   2006 WL 1116118 (D. Minn. Apr. 25, 2006).............................................................. 4

*In re Syngenta AG MIR 162 Corn Litig.*,
   357 F. Supp. 3d 1094 (D. Kan. 2018)........................................................................ 4

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005)........................................................................ 4

*Johnson v. Georgia Highway Exp., Inc.*,
   488 F.2d 714 (5th Cir. 1974) ................................................................................... 11

*Joseph v. Liberty Oilfield Servs.*,
   20-cv-00946 (D. Colo. Oct. 7, 2022).......................................................................... 6

*Local 295 IBT Emp. Group. Welfare Fund v.Compass Minerals, Int'l, Inc.et al.*,
   22-cv-02432 (EFM).................................................................................................... 9

*Lucas v. Kmart Corp.*,
   2006 WL 2729260 (D. Colo. July 27, 2006).............................................................. 13

*Matter of Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ..................................................................................... 5

*Mo. v. Jenkins by Agyei*,
    491 U.S. 274 (1989) ......................................................................................................... 7

*Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*,
    No. 19-940 GJF, 2021 WL 1339305 n.6 (D.N.M. Apr. 9, 2021) ................................... 7

*Nakamura v. Wells Fargo Bank, Nat'l Ass'n*,
    2019 WL 2185081 (D. Kan. May 21, 2019) ......................................................... 2, 4, 7

*Nieberding v. Barrette Outdoor Living, Inc.*,
    129 F. Supp. 3d 1236 (D. Kan. 2015)........................................................................... 3

*Or. Laborers Emp. Pen. Tr. Fund v. Maxar Techs. Inc.*,
    2024 WL 98387 (D. Colo. Jan. 1, 2024) ....................................................................... 6

*Paulson v. McKowen*,
    2023 WL 2528783 (D. Colo. Mar. 15, 2023) ................................................................ 6

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
    2021 WL 2981970 (D. Colo. July 15, 2021).................................................... 4, 6, 8, 14

*Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*,
    2021 WL 1387110 (D. Colo. Apr. 13, 2021) .............................................................. 15

*Rep. of the Third Cir. Task Force, Ct. Awarded Att'y Fees*,
    108 F.R.D. 237 (3d Cir. 1985)...................................................................................... 4

*Shaw v. Interthinx, Inc.*,
    2015 WL 1867861 (D. Colo. Apr. 22, 2015) ............................................................ 2, 7

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993)........................................................................................ 5

*Tuten v. United Airlines, Inc.*,
    41 F. Supp. 3d 1003 (D. Colo. 2014) ......................................................................... 12

*Uselton v. Com. Lovelace Motor Freight, Inc.*,
    9 F.3d 849 (10th Cir. 1993) ...................................................................................... 4, 6

*Vaszlavik v. Storage Corp.*,
    2000 WL 1268824 (D. Colo. Mar. 9, 2000)........................................................... 12, 14

*Vinh Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014).............................................................. 11

iv

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ........................................................................... 12

*Voulgaris v. Array Biopharma, Inc.*,
  60 F.4th 1259 (10th Cir. 2023) ..................................................................... 6, 8, 9

*Voulgaris v. Array Biopharma, Inc.*,
  2021 WL 6331178 (D. Colo. Dec. 3, 2021) .......................................................... 9, 10

*Whiteley v. Zynerba Pharms., Inc.*,
  2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) .......................................................... 11

## Statutes

15 U.S.C. §77z-1(a)(4) ........................................................................................ 15

## Rules

Fed. R. Civ. P. 23 .............................................................................................. 1

Pursuant to this Court's Preliminary Approval Order (Dkt. No. 35), Lead Plaintiff John Valentine and Named Plaintiff Paul O'Renick (together, "Plaintiffs"), on behalf of themselves and the Class, respectfully move this Court, pursuant to Fed. R. Civ. P. 23, for an order granting an award of attorneys' fees, reimbursement of litigation expenses, and an award to Plaintiffs.[1]

## I.    PRELIMINARY STATEMENT

After a year and a half of litigating, The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel for Lead Plaintiff and the Settlement Class, have negotiated a $4.9 million cash recovery for the benefit of the Settlement Class. Lead Counsel achieved this result through diligent prosecution of this Action, without the benefit of any government or regulatory action, and in the face of considerable challenges from formidable opposition – all while bearing the substantial risk of receiving no compensation at all. For their efforts, Plaintiffs and Lead Counsel seek: (a) an award of attorneys' fees of one-third of the Settlement Fund; (b) reimbursement of litigation expenses in the amount of $43,583.85; and (c) an award of $7,500 each to Mr. Valentine and Mr. O'Renick to compensate them for their time stewarding this Action on behalf of the Settlement Class.

The requested fee is reasonable. To achieve this Settlement, Lead Counsel, among other things, conducted a pre-filing investigation; filed an initial complaint; retained and supervised an investigation firm to conduct interviews with relevant witnesses, including interviews of former Company employees and former government personnel; reviewed documents and government appropriation records concerning Compass Minerals and the fire retardant industry; drafted the detailed Amended Complaint; retained an economic expert to assess damages; and then – after

---

[1] The Court is respectfully referred to the Declaration of Michael Cohen ("Cohen Dec."), for a detailed description of: the history of the Action; the nature of the claims asserted; the uncertainties of continued litigation; and the terms of the Plan of Allocation. All citations to "¶ __" and "Ex. __" in this motion refer to paragraphs in, and exhibits to, the Cohen Dec.

1

putting the fruits of their nearly year-long investigation to use by filing the Amended Complaint – participated in settlement discussions with Defendants, ultimately reaching settlement. In total, Lead Counsel spent more than 750 hours of professional time litigating this Action on behalf of the Settlement Class.

This was not an easy case to litigate. Courts have recognized that securities class actions are notoriously complex and risky, and this one is no exception. While Lead Counsel was able, through painstaking investigative work, to amass substantial factual support for the allegations in Plaintiffs' Amended Complaint, Defendants have formidable arguments against liability and damages such that continued litigation would have been fraught with risk. Nonetheless, Lead Counsel was able to negotiate this $4.9 million Settlement due to Lead Counsel's diligent prosecution of the Action.

Lead Counsel's fee request is also reasonable because it is no more than what courts typically award in similar cases. In this Circuit, "a fee award of one-third of the common fund [is] 'well within the range typically awarded in class actions.'" *Nakamura v. Wells Fargo Bank, Nat'l Ass'n*, 2019 WL 2185081, at *2 (D. Kan. May 21, 2019); *see Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) ("'customary fee . . . in a common fund settlement is approximately one third of the total economic benefit'").

Lead Counsel's litigation expenses should also be reimbursed. Lead Counsel incurred them as a result of reasonable and necessary steps taken during the litigation. The bulk of the expenses were for retaining investigators and experts. These expenses were all necessary to obtain this Settlement. Significantly, the requested reimbursement of $43,583.85 is substantially less than the $55,000 amount stated in the Notice disseminated to the Settlement Class.

Finally, the Court should award Plaintiffs $15,000 in total (comprised of $7,500 each to

Mr. Valentine and Mr. O'Renick) to reimburse them for their time spent on behalf of the Settlement Class. Plaintiffs diligently discharged their responsibilities to the Settlement Class, which paved the way for this Settlement. Compensatory awards for representative plaintiffs are expressly contemplated by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and routinely awarded in securities class actions.

The Settlement Class supports the requests. Notice of the Settlement (which describes the request for attorneys' fees, reimbursement of expense, and award to Plaintiffs) has been disseminated to 46,395 potential Settlement Class Members. Additionally, the Summary Notice was published on *GlobeNewswire*. To date, not a single objection has been filed,[2] which further supports the awards that Plaintiffs request.

## II. LEAD COUNSEL IS ENTITLED TO A REASONABLE PERCENTAGE OF THE COMMON FUND

"Congress, the Executive Branch, and [the Supreme] Court, moreover, have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions[.]" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) (internal citation omitted). In addition, the Supreme Court has established that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (in common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d

---

[2] The deadline for filing objections is October 21, 2025. Plaintiffs will address any objections received after the date of this submission in Plaintiffs' reply papers to be filed with the Court on November 11, 2025.

1236, 1248 (D. Kan. 2015) ("In Kansas, an attorney who recovers a common fund in a class action has the right to recover a reasonable fee from the fund as a whole."). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered on the theory "'that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.'" *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (awarding attorneys' fees based on percentage of settlement fund).

"[T]he more recent trend has been toward utilizing the percentage method in common fund cases." *Id.*; *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2021 WL 5369798, at *3 (D. Kan. Nov. 17, 2021); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1113-14 (D. Kan. 2018); *Nakamura*, 2019 WL 2185081, at *1. The percentage method "is less subjective than the lodestar plus multiplier approach" and is particularly appropriate where, as here, class counsel "was initially retained on a contingent fee basis." *Gottlieb*, 43 F.3d at 484.[3]

Indeed, "[t]here are strong policy reasons behind the judicial and legislative preference for the percentage of recovery method of determining attorney fees in these cases." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005); *see also Rep. of the Third Cir. Task Force, Ct. Awarded Att'y Fees*, 108 F.R.D. 237, 254 (3d Cir. 1985). **First**, "[the percentage] methodology rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances." *In re St. Paul Travelers Sec. Litig.*, 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006); *see also In re N.M. Indirect Purchasers Microsoft Corp. Antitrust Litig.*, 149 P.3d 976, 993 (N.M. Ct. App. 2006)

---

[3] *See also Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993) (adopting percentage approach "rather than lodestar" in awarding attorneys' fees); *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 2981970, at *1 (D. Colo. July 15, 2021) ("In common fund cases, the Tenth Circuit has 'recognized the propriety of awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis.'").

("The percentage method is preferred in some jurisdictions, including the Tenth Circuit, because this method rewards efficient and prompt resolutions of class actions . . . ."). ***Second***, the percentage method is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated on a percentage-of-the-recovery method. *See Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) (with the percentage-of-the-fund method, "the court apportions the fund between the class and its counsel in a manner that rewards counsel for success and penalizes it for failure."). ***Third***, using the percentage-of-the-fund method reduces the burden on the court, as it would otherwise have to conduct a detailed and time-consuming review of counsel's time entries. *In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407, 1411 (D. Wyo. 1998) ("[I]t is much easier and far less demanding of scarce judicial resources to calculate a percentage of the fund fee than to review hourly billing practices over a long, complex litigation."). By simplifying the court's task, the percentage method also ensures the funds can be distributed to class members promptly. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1270 (D.C. Cir. 1993). ***Fourth***, the text of the PSLRA states that class counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered by the class. *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 (3d Cir. 2005) n. 7 (3d Cir. 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable.").

## III.    THE JOHNSON FACTORS CONFIRM THE REASONABLENESS OF LEAD COUNSEL'S FEE REQUEST

In the Tenth Circuit, courts consider the "*Johnson* factors" in determining a reasonable fee award percentage:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the

5

customary fee; (6) any prearranged fee – this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1263 n.1 (10th Cir. 2023). Since "'rarely are all of the *Johnson* factors applicable,'" "a court need not specifically address each *Johnson* factor." *Or. Laborers Emp. Pen. Tr. Fund v. Maxar Techs. Inc.*, 2024 WL 98387, at *3 (D. Colo. Jan. 1, 2024); *see Uselton*, 9 F.3d at 854.

## 1.    The Results Obtained

Among the *Johnson* factors, a critical consideration is the results achieved. *DaVita*, 2021 WL 2981970, at *2. Here, Lead Counsel spent over a year investigating and crafting the theory of its case and obtained a $4.9 million recovery for the Class. This is a highly beneficial result that represents an approximately 8% recovery of the Settlement Class's best-case damages estimate, which is multiples above the average recovery in securities class actions nationwide. In 2024, securities class actions settled for a median recovery of 1.2% of damages, down from a median of 1.8% for the three years prior.[4] In evaluating proposed settlements, courts have found smaller percentage recoveries to be reasonable and supportive of one-third percentage fees awards. *See Joseph v. Liberty Oilfield Servs.*, 20-cv-00946, Dkt. No. 138 (D. Colo. Oct. 7, 2022) (awarding one-third of the $3.9 million Settlement Fund, which represented 3.9% of best case scenario damages of $101 million); *Paulson v. McKowen*, 2023 WL 2528783, at *7 (D. Colo. Mar. 15, 2023) (awarding net 33-1/3% fee; noting 6.4% recovery was "in line with [Tenth Circuit] median settlement values of 7.6%"); *see also In re Crocs, Inc. Sec. Litig.*, 2014 WL 4670886, at *4-*5 (D.

---

[4] E. Flores & S. Starykh, *Recent Trends In Securities Class Action Litigation: 2024 Full-Year Review*, at 27 (Fig. 24), *available at*: https://www.nera.com/content/dam/nera/publications/2025/PUB_2024_Full-Year_Sec_Trends_0122.pdf.

Colo. Sept. 18, 2014) (awarding 30% fee; settlement of dismissed action represented "'1.3%'" of the amount of achievable damages). Lead Counsel stands proudly behind the results obtained for the Class, which support the requested fee award.

### 2. The Customary Fees in this District

An appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for their services in the open marketplace. *See Mo. v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). In the Tenth Circuit, it is not unusual for courts to award fees of 40% of the settlement fund. *Nakamura*, 2019 WL 2185081, at *3 (D. Kan. May 21, 2019) (citing cases); *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 WL 1339305, at *7 n.6 (D.N.M. Apr. 9, 2021) (citing cases). Thus, "a fee award of one-third of the common fund [is] 'well within the range typically awarded in class actions.'" *Nakamura*, 2019 WL 2185081, at *2. Indeed, "*[t]he customary fee* awarded to class counsel in a common fund settlement is approximately *one third of the total economic benefit* bestowed on the class." *Interthinx*, 2015 WL 1867861, at *6 (emphasis added); *see also Gundrum v. Cleveland Integrity Servs., Inc.*, 2017 WL 3503328, at *5 (N.D. Okla. Aug. 16, 2017) ("[T]he Court notes that contingent fees in the range of one-third of a common fund are frequently awarded in Rule 23 class settlements."). Lead Counsel invested over 750 hours and $43,583.85 in out-of-pocket expenses into this case, knowing they would recover nothing unless they could obtain a judgment or secure a settlement. Lead Counsel's request for the customary one-third fee is reasonable.

### 3. The Time and Labor Required

#### a. The Amount of Time and Labor Dedicated by Lead Counsel Justifies the Requested Fee

The amount of time and labor Lead Counsel dedicated to the prosecution and settlement of this Action also supports the reasonableness of its fee requested. As detailed in the Cohen

Declaration, Lead Counsel, among other things, conducted a pre-filing investigation; filed an initial complaint; retained and supervised an investigator to interview relevant witnesses, which included interviews of former Company employees and former government personnel; reviewed documents and government appropriation records concerning Compass Minerals and the fire retardant industry; drafted the detailed Amended Complaint; retained an economic expert to assess damages; and then, after filing the Amended Complaint, participated in settlement discussions with Defendants, ultimately reaching settlement. Cohen Dec. ¶46.[5]

### b.      A Lodestar Cross-Check Supports the Requested Fee

While the Court is "not required to perform a lodestar cross-check," *Array Biopharma*, 60 F.4th at 1265, a cross-check also supports the reasonableness of the requested fee. The requested fee award ($1,633,333 before interest) is approximately 1.91 times Lead Counsel's $853,076.46 lodestar. Cohen Dec. ¶¶41-42. This modest multiplier is reasonable and in line with (or lower than) multipliers routinely awarded in courts in this Circuit. *See, e.g.*, *Array Biopharma*, 60 F.4th at 1266 (2.8 multiplier "'consistent with the typical range of multipliers routinely approved by courts in this District and the Tenth Circuit'"); *DaVita*, 2021 WL 2981970, at *3 (awarding fee representing 2.75 multiplier, "which is at the low end of the typical range of multipliers routinely approved by courts in this District and the Tenth Circuit"); *In re Miniscribe Corp.*, 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming application of a 2.57 multiplier); *Crocs*, 2014 WL 4670886, at *4-*5 (collecting authority approving multipliers ranging from 2.5 to 4.6); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 2006 WL 8429707, at *4 (D. Colo. Sept. 29, 2006) ("[L]ead counsel who create a common fund for the benefit of a class are rewarded with fees that often are at least two times the

---

[5] Lead Counsel will expend additional time and expenses in connection with the settlement administration process, attending the Settlement Hearing, and, if approved, assisting with implementation of the Settlement. No additional compensation will be sought for this work. ¶47.

reasonable lodestar figure, and in some cases reach as high as five to ten times the lodestar figure.").

Lead Counsel's hourly rates are also appropriate in this complex securities class action. The Tenth Circuit has noted that courts should look to rates of "counsel litigating a complex securities class action on a contingent basis . . . to determine whether counsel charged reasonable rates." *Array Biopharma*, 60 F.4th at 1266. In addition, "[w]here litigation features a national scope and requires a 'highly-specialized' opposing counsel, national rates should apply to determining the lodestar." *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 17-ML-2792-D, 2020 WL 9936692, at *6 (W.D. Okla. June 11, 2020), *aff'd,* 997 F.3d 1077 (10th Cir. 2021). Here, Lead Counsel's rates range up to $1,512.33 for partners and $932.21 for associates. *See* Cohen Decl. ¶42. These rates are comparable to those approved in other securities class actions in the Tenth Circuit. *See, e.g.*, *Array Biopharma*, 60 F.4th at 1266 (finding "rates charged in this case ($455 to $1,050) were 'generally consistent' with those approved in similar cases"); *Local 295 IBT Emp. Group. Welfare Fund v. Compass Minerals, Int'l, Inc. et al.,* 22-cv-02432 (EFM) Dkt. Nos. 142, 147 (finding fee request to be fair and reasonable with Lead Counsel's partner rates as high as $1,480). Accordingly, the reasonableness of Lead Counsel's one-third fee request is confirmed by a lodestar cross-check.

### 4.    The Novelty and Difficulty of the Legal and Factual Questions

Next, an analysis of the novelty and difficulty of the issues involved in this Action also favors granting Lead Counsel's request for attorneys' fees. "Securities fraud class actions are by their nature, complex and difficult to prove." *In re Charter Commc'ns, Inc.*, 2005 WL 4045741, at *15 (E.D. Mo. June 30, 2005); *see also Voulgaris v. Array Biopharma, Inc.*, 2021 WL 6331178, at *13 (D. Colo. Dec. 3, 2021) ("[S]ecurities class actions present inherently complex and novel issues, which are constantly evolving."), *aff'd*, 60 F.4th 1259 (10th Cir. 2023); *Crocs*, 2014 WL

9

4670886, at *3 ("[l]itigating an action under the PSLRA is not a simple undertaking").

That is certainly the case here, where Plaintiffs and Lead Counsel faced substantial risks in moving forward with this Action at every step of the process. While Plaintiffs are confident that their claims are meritorious and supported by the evidence, there nonetheless are serious questions of law and fact that would make continuing to litigate risky and that would carry a substantial risk of recovering limited or no damages if the Court or jury agreed with any of Defendants' arguments. For instance, Plaintiffs expect Defendants would have raised formidable arguments concerning their duty disclose the information at issue. *See* Cohen Decl., ¶¶27-34.

In addition, assuming Plaintiffs proved liability, Plaintiffs would be required to prove that Defendants' alleged misstatements inflated Compass's stock price during the Class Period, and that, upon the disclosures relating to such misinformation, the stock price dropped, damaging the Class. Plaintiffs are confident they could present expert testimony here, but the crucial element of loss causation and damages would have almost certainly have been reduced at trial to an unpredictable and risky "battle of the experts." *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe"). Plaintiffs would face other risks as well, such as obtaining and maintaining class certification, as well as post-judgment appeals. *See Array Biopharma*, 2021 WL 6331178, at *7. Accounting for all of the foregoing risks, Plaintiffs and the Class would by no means be assured of an ultimate ruling in their favor. Accordingly, the novelty and difficulty of these legal and factual questions (all with no enforcement action to guide Plaintiffs) further support the Settlement achieved and the requested attorneys' fees.

> **5.      The Skill Required and the Experience, Reputation and Ability of Lead Counsel**

The skill required and the experience, reputation, and ability of the attorneys also support

the requested fee award. *See Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989). Lead Counsel ranks among the nation's top law firms in securities class actions, and has successfully served as Lead Counsel in many such cases. *See* Cohen Dec., Ex. 4 (Rosen Law Firm resume). Indeed, courts throughout the country have recognized that the Rosen Law Firm is well qualified to prosecute securities class actions. *See, e.g., Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014)  (in a case settled after summary judgment, Rosen Law "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation."); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (considering Rosen Law's achievement of $250 million settlement, and finding that "[t]he quality of representation by both Plaintiffs' and Defendants' counsel was high in this case and supports the requested fee."); *Whiteley v. Zynerba Pharms., Inc.*, 2021 WL 4206696, at *12 (E.D. Pa. Sept. 16, 2021) (recognizing that Rosen Law has "substantial experience prosecuting large-scale class actions, including securities class actions like the case *sub judice.* This experience undoubtedly contributed to the favorable outcome negotiated with equally experienced opposing counsel.").

Courts also take into account the quality of opposing counsel. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 455 (10th Cir. 1988) (affirming district court's analysis). Defendants are represented in this action by Skadden, Arps, Slate, Meagher & Flom, one of the nation's most prominent law firms. In the face of this formidable opposition, Lead Counsel developed their case so as to persuade Defendants to agree to a substantial $4.9 million recovery for the Class. The skill, experience, reputation, and ability of Plaintiffs' and Defendants' respective counsel further support the fee requested here.

###### 6.     The Contingent Nature of the Fee

Courts in the Tenth Circuit have found that "the risk of non-recovery" weighs heavily in considering an award of attorneys' fees. *Vaszlavik v. Storage Corp.*, 2000 WL 1268824, at \*4 (D. Colo. Mar. 9, 2000); *see also Crocs*, 2014 WL 4670886, at \*4 ("A contingent fee arrangement often weighs in favor of a greater fee because '[s]uch a large investment of money [and time] place[s] incredible burdens upon law practices.'") (alterations in original).

Here, Lead Counsel has prosecuted this Action on a wholly contingent basis for over a year and a half, and has knowingly taken on all of the associated risks present in securities class actions. From the outset, Lead Counsel understood it was embarking on a complex, expensive, and lengthy litigation, which would require a significant investment of attorney time and expenses, with no guarantee of being compensated, especially in light of the large and highly experienced law firm that would be defending the case.

Moreover, as a substantial number of motions to dismiss are granted in securities class actions, there existed a real risk that Lead Counsel would invest substantial resources and receive nothing at all in return. *See Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014) ("Class Counsel took the case on a contingent basis, which permits a higher recovery to compensate for the risk of recovering nothing for their work."). Unlike defendants' counsel, who are traditionally paid substantial guaranteed hourly rates and reimbursed promptly for their expenses, Lead Counsel have not been compensated for any time or expenses since the case began and would have received no compensation had it not been resolved successfully for the Class. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming 3.65 multiplier and explaining that in contingency fee cases, courts "routinely enhance the lodestar to reflect the risk of nonpayment" and that this "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal

12

hourly rates for winning contingency cases."). The contingent nature of the fees weighs strongly in favor of Lead Counsel's request.

### 7.     The Preclusion of Other Matters by Lead Counsel

As evidenced by the over 750 hours incurred in prosecuting this Action, Lead Counsel was precluded from spending time on other matters due to their litigation of this Action. This factor weighs in favor of approving the fee request. *See Lucas v. Kmart Corp.*, 2006 WL 2729260, at \*6 (D. Colo. July 27, 2006) ("Large-scale class actions . . . necessarily require a great deal of work, and a concomitant inability to take on other cases.").

### 8.     The Undesirability of the Action

Moreover, this case was plainly undesirable. The PSLRA requires that plaintiffs broadly disseminate notice of the filing of a securities class action advising class members they may seek appointment as lead plaintiffs and ask that their counsel be appointed lead counsel. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 (2018). These notices often draw many applications, *id.*, but here, nobody other than the initial plaintiff, represented by the Rosen Law Firm, even applied. *See* Dkt. No. 23 at 2 (Order appointing Plaintiff Valentine as Lead Plaintiff under the PSLRA, noting that there were no other movants).

## IV.     THE REACTION OF THE CLASS TO THE REQUESTED FEE FURTHER SUPPORTS ITS REASONABLENESS

Courts in this Circuit recognize the significance of class member reaction to the request for attorneys' fees and expenses. *See Crocs*, 2014 WL 4670886, at \*5. Here, over 46,395 copies of the Postcard Notice were mailed or emailed to potential Class Members and nominees, advising them that Lead Counsel would be requesting an award of attorneys' fees not to exceed 33-1/3% of the Settlement Amount, plus expenses not to exceed $55,000, plus interest earned on both amounts. *See* Cohen Dec., Ex. 1. As of the filing of this motion, no Class Member has objected to these

13

requests, which supports their reasonableness. *See Crocs*, 2014 WL 4670886, at \*5. In addition, Plaintiffs fully support the Settlement and Lead Counsel's request for fees and expenses. *See* Cohen Dec., Ex. 2 and Ex. 3.

## V.    LEAD COUNSEL IS ENTITLED TO AN AWARD OF ITS REASONABLE LITIGATION EXPENSES

"[A]n attorney who creates . . . a common fund for . . . a class is entitled to receive reimbursement of all reasonable costs incurred." *Vaszlavik*, 2000 WL 1268824, at \*4.

Lead Counsel seeks reimbursement of $43,583.85 for its costs and expenses in connection with the prosecution of this Action, plus interest at the same rate as earned by the Settlement Fund. The Cohen Dec. contains a breakdown of these expenses, which consist largely of expert fees, investigator fees and fees associated with distributing notice to Class Members. ¶43-44. These expenses should be reimbursed because they are of the type that are usually paid by clients in non-contingent litigation and are reasonable. *See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cnty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses properly awarded if charges would normally be billed to client); *DaVita*, 2021 WL 2981970, at \*4 (awarding similar expenses which are "routinely awarded in similar actions"); *In re Bank of Am. Wage & Hour Emp. Litig.*, 2013 WL 6670602, at \*4 (D. Kan. Dec. 18, 2013) (finding expenses reasonable if "the[y] are of the kind and character typically borne by clients in non-contingent fee litigation, including the retention of experts"). To date, no objections have been received regarding this expense request.

## VI.    THE REQUESTED PSLRA AWARDS FOR PLAINTIFFS SHOULD BE APPROVED

The Court should also grant Plaintiffs compensatory awards, totaling $15,000 (consisting of $7,500 each to Mr. Valentine and Mr. O'Renick). The award to Plaintiffs amount to about 0.3% of the Settlement.

The PSLRA permits "the award of reasonable costs and expenses (including lost wages)

14

directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. §77z-1(a)(4). *See, e.g., Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, 2021 WL 1387110, at \*6 (D. Colo. Apr. 13, 2021) (awarding lead plaintiffs $10,000 each). As set forth in the Plaintiffs' declarations, Ex. 2 and Ex. 3, both Plaintiffs have actively and effectively fulfilled their obligations as representatives for the Class. They have kept abreast of developments in the case, reviewed and approved the Complaints, communicated with counsel, and approved the Settlement that Lead Counsel was ultimately able to reach with Defendants. *See id*. Without these Plaintiffs stepping forward and participating, there would have been no Settlement at all, so this $4.9 million settlement is attributable to their efforts as well. Accordingly, the requested collective award of $15,000 is more than justified by Plaintiffs' efforts on behalf of the Class Members. *See* Cohen Dec. ¶48.

## VII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Lead Counsel attorneys' fees in the amount of one-third of the Settlement Amount (plus interest), reimbursement of out-of-pocket expenses of $43,583.85, and an Award to Plaintiffs totaling $15,000.

Dated: October 14, 2025

Respectfully submitted,

**HOLLIS LAW FIRM**

*/s/ Jason Chambers*
Jason Chambers, D. Kan. # 24927
8101 College Blvd., Ste 260
Overland Park, KS 66210
Telephone: (913) 385-5400
Fax: (913) 385-5402
Email: jason@hollislawfirm.com

**THE ROSEN LAW FIRM, P.A.**

*/s/ Phillip Kim*
Phillip Kim (admitted pro hac vice)
Michael Cohen (admitted pro hac vice)

275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
        mcohen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Settlement Class*

16